**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jesus SANCHEZ–MEZA, Defendant-Appellant.**

**No. 76–1542.**

United States Court of Appeals, Ninth Circuit.

Nov. 5, 1976.

James M. Carter, Circuit Judge, dissented and filed opinion.

---

John J. Cleary, Atty. (argued) of Federal Defenders, San Diego, Cal., for defendant-appellant.

Jeffrey F. Arbetman, Asst. U. S. Atty. (on the brief), Terry J. Knoepp, U. S. Atty., Stephen W. Peterson, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and CARTER, Circuit Judges, and BURNS,* District Judge.

BURNS, District Judge:

Appellant contends he was unconstitutionally denied his right to trial by jury. We agree.

Appellant originally was indicted on two felony counts: unlawful possession of illegal documentation concerning alien status, 18 U.S.C. § 1426, and unlawful re-entry into the United States, 8 U.S.C. § 1326.

On the day of trial the prosecutor filed an information charging appellant with a misdemeanor of conspiring to elude an examination by immigration officers by making false and misleading representations, a violation of 18 U.S.C. § 371 and 8 U.S.C. § 1325.

Appellant's motion for a jury trial was denied, and, from the conviction by the Judge, and resulting judgment of six months sentence, he appeals.

Article III, Section 2, clause 3 of the Constitution provides that "[t]he Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." The Sixth Amendment of the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

The government contends these provisions do not apply to a conspiracy to violate 8 U.S.C. § 1325 because it is not a "crime," but instead is a petty offense since its maximum potential sentence in six months. 18 U.S.C. § 371.[1] Both sides agree that petty offenses may be tried without a jury. But the appellant contends that conspiracy, even one to commit a petty offense, is not a petty offense because it is a serious offense and was treated as such at the time the Constitution was adopted. For the source of his argument, he relies on the following history.

## I. CONSPIRACY: HISTORICAL BACKGROUND

In 1285 Parliament passed the first English statute referring to conspiracy, 13 Edw. 1. Conspiracy was a serious offense with a limited definition: "a combination to carry on legal proceedings in a vexatious or improper way." It was a forerunner of contemporary actions for malicious prosecution. 2 Stephen, Hist. of Crim. Law, 228 (1883).

This definition was extended in 1611 in *Bagg's Case,* 11 Co.Rep. 93b, 98a (1616), to cover "errors and misdemeanors extrajudicial, tending to the breach of peace, or . . . to the raising of faction, controversy, debate, or to any manner of misgovernment; so that no wrong or injury, either public or private, can be done, but that it shall be (here) reformed or punished by due course of law."

The meaning of conspiracy continued to expand well before the drafting of our Constitution. In 1724, certain defendants were convicted of conspiring to marry off a pauper woman to the inhabitant of another parish so that their own parish might escape further liability for her support. *Rex v. Edwards,* 8 Mod. 320 (1724).

In 1867, Congress underscored the seriousness of the offense by providing for it maximum penalties of two years imprison-

---

* Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation.

1. At least for the first such offense. A second conviction under § 1325 would be a felony.

ment and fines from $1,000 to $10,000. Congress in 1948 altered the statute significantly. It provided a general maximum penalty of five years imprisonment for conspiracies, but if the object of the conspiracy was a misdemeanor, the conspiracy maximum was the same as the maximum for the object offense. As the Reviser's Note to 18 U.S.C. § 371 shows, this raised the maximum from two years to five, so as to enhance the penalty for most conspiracies. At the same time, it alleviated the injustice of permitting a felony conviction for conspiring to commit a misdemeanor. Certain grave crimes, e. g., 18 U.S.C. §§ 241, 794, etc., retained special conspiracy provisions. Reviser's Note.

In 1888 the United States Supreme Court decided *Callan v. Wilson,* 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223. Callan, a member of a musicians' organization, was convicted at a nonjury trial for conspiring to force payment of fines levied by the union on another member. He was fined $25.00, and was to be imprisoned in jail for 30 days if he failed to pay.

Callan failed to pay, was imprisoned, and for relief from his imprisonment sought a writ of habeas corpus. The court reviewed the common law of conspiracy and concluded that it was not a petty offense:

> ". . . conceding that there is a class of petty or minor offences, not usually embraced in public criminal statutes, and not of the class or grade triable at common law by a jury . . . we are of opinion that the offence with which the appellant is charged does not belong to that class. A conspiracy such as is charged against him and his codefendants is by no means a petty or trivial offence. 'The general rule of the common law,' the Supreme Judicial Court of Massachusetts said in *Commonwealth v. Hunt,* 4 Met. 111, 121, 'is, that *it is a criminal and indictable offence,* for two or more to confederate and combine together, by concerted means to do that which is unlawful or criminal . . .'" Id. at 555, 8 S.Ct. at 1306. (Emphasis added.)

Felix Frankfurter, before coming on the Supreme Court, concluded in a frequently-cited article that *Callan* required all conspiracies to be tried by a jury. Frankfurter and Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv.L.Rev. 917, 979 (1926). "Conspiracy, we know," he wrote, "is not a petty offense."

## II. CONSPIRACY: CALLAN'S CONTINUING VITALITY

The government contends that *Callan* is inapplicable because appellant there had been convicted of common law conspiracy, whereas appellant here was charged with statutory conspiracy. The latter offense is no less serious than the former, however. Indeed, because the statute requires the government to prove that the accused performed some overt act in furtherance of the conspiracy, it could be argued that the statutory crime is even more serious.

The government further contends that post-*Callan* cases place a gloss upon that case and undermine Frankfurter's conclusion. It contends that under *Baldwin v. New York,* 399 U.S. 66, 68–69, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), and *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), a court need only examine the maximum potential penalty for an offense to determine whether it is petty, and that a six-month sentence is short enough to permit classification of the offense as petty.

We disagree. *Baldwin* said only that "a potential sentence in excess of six months' imprisonment is sufficiently severe *by itself* to take the offense out of the category of 'petty.'" 399 U.S. at 69 n.6, 90 S.Ct. at 1888 (emphasis added). *Baldwin* did not hold that the maximum potential sentence was the sole criterion by which to determine whether an offense was petty; it said only that the maximum penalty was "the most relevant" objective criterion in making the petty or nonpetty determination. And in *Duncan,* the court made it clear that crimes carrying only a six months maximum sentence do not call for a jury trial "if they otherwise qualify as petty offenses."

391 U.S. at 159, 88 S.Ct. at 1453. Nothing in *Duncan* casts doubt on *Callan's* result or reasoning as to the crime of conspiracy.

None of the government's cases repudiates *District of Columbia v. Colts,* 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed 177 (1930), or *District of Columbia v. Clawans,* 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937). In both cases the Supreme Court looked beyond the maximum potential sentence to determine whether the respective offenses were petty. Both cases recognize that the meaning of the Constitutional provisions relating to trial by jury are to be interpreted in light of the common law at the time the Constitution was adopted. Both, in determining whether the offense was petty, inquired whether it was indictable at common law. *Colts, supra,* 282 U.S. at 73, 51 S.Ct. 52; *Clawans, supra,* 300 U.S. at 625, 57 S.Ct. 660. Both also inquired whether the offense was morally offensive and *malum in se,* or merely *malum prohibitum. Colts, supra,* 282 U.S. at 73, 51 S.Ct. 52; *Clawans, supra,* 300 U.S. at 625, 57 S.Ct. 660.

In *Colts* the court answered these questions affirmatively and found that the accused was entitled to a jury trial. In *Clawans,* the court answered the questions negatively, but proceeded to a third question: was the severity of the punishment, by itself, sufficient to take the offense out of the petty category? The court looked to state statutes relating to petty offenses and passed prior to the American Revolution. It found that at least eight of these statutes provided for punishment up to six months. From this the court concluded that a ninety day penalty for an offense which by its nature could properly be characterized as petty was not sufficiently severe to remove it from the petty classification.

*Baldwin, supra,* did refer to other cases in which a six-month maximum sentence was short enough to permit classification of the offense as petty. The offense involved in all those cases was criminal contempt, however, an offense which historically has been tried without a jury. It is an offense *sui generis,* as the court in *Cheff v. Schnacken-*

berg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), recognized:

> "Since Cheff received a sentence of six months' imprisonment . . . *and since the nature of criminal contempt, an offense sui generis, does not, of itself, warrant treatment otherwise* . . . Cheff's offense can be treated as 'petty' in the eyes of the statute and our prior decisions." 384 U.S. at 380, 86 S.Ct. at 1526 (emphasis added).

As Justice Douglas noted in his dissent in *Cheff,* contempt was not a serious offense at the time the Constitution was adopted:

> "Punishment for contempt was largely a minor affair at the time the Constitution was adopted, the lengthy penalties of the sort imposed today being a relatively recent innovation." 384 U.S. at 384–385, 86 S.Ct. at 1526.

Conspiracy, by contrast, does not have a history of summary adjudications without a jury, nor has it been looked upon as a minor affair:

> "[A] collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. . . . In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise." *Callanan v. United States,* 364 U.S. 587, 593–594, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961).

Under the *Callan-Colts-Clawans* analysis, we conclude that appellant was entitled to a jury trial, first, because the crime with which he was charged was an indictable and serious offense at common law, and second, because the crime itself is morally offensive and *malum in se. Baldwin,* upon which the government relies, recognizes the continuing validity of this form of analysis:

> "Decisions of this Court have looked to both the nature of the offense itself, *District of Columbia v. Colts,* . . . as

well as the maximum potential sentence, *Duncan v. Louisiana* . . . in determining whether a particular offense was so serious as to require a jury trial." 399 U.S. at 69 n.6, 90 S.Ct. at 1888.

If *Callan* has lost its vitality, it is for the Supreme Court, not this court, to say so.

Logic might demand a different result. Perhaps penalties for offenses should be infallible barometers for measuring the seriousness, for jury trial purposes, of an offense. If so, this simply is a case where history and precedent require a decision which logic and, perhaps, common sense do not.

Reversed.

JAMES M. CARTER, Circuit Judge (dissenting):

The majority has done a commendable job of tracing the history of the crime of conspiracy. And I agree with them that the determination of what constitutes a "petty" offense does not turn exclusively on the maximum sentence possible for the offense. It does not follow, however, that all crimes once deemed serious by the common law are now deserving of a jury trial.

I believe, as does the majority, that all criteria should be considered in determining whether a particular offense is petty. Certainly one factor is whether the crime is designated a felony or a misdemeanor by the legislature. In 1948, conspiracy became a crime with two degrees by Congressional action. Act of June 25, 1948, c. 645, 62 Stat. 701, *amending* 18 U.S.C. §§ 88 and 294 (1940), codified at 18 U.S.C. § 371. A conspiracy is a felony if one of the objects is a felony; otherwise, it is a misdemeanor. *Williams v. United States,* 238 F.2d 215 (5 Cir.), *cert. denied,* 352 U.S. 1024, 77 S.Ct. 589, 1 L.Ed.2d 596 (1956). The majority opinion does not properly account for this change in its discussion of the common law crime of conspiracy.

A statutorily defined misdemeanor usually is considered a petty offense not entitling the defendant to a jury trial. *Duncan v. Louisiana,* 391 U.S. 145, 160–61, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (*semble*). In the case at bar, appellant was charged with conspiring to elude examination by immigration officials by making false representations, a misdemeanor under 8 U.S.C. § 1325. Therefore, the conspiracy with which appellant was charged was also a misdemeanor.

The Supreme Court recently has been focusing on the length of the potential sentence to determine whether an offense is petty. In *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), the Court said:

"[I]n deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense, and we have found the most relevant such criteria in the severity of the maximum authorized penalty. Applying those guidelines, we have held that a possible six-month penalty is short enough to permit classification of the offense as 'petty.' . . ." 399 U.S. at 68–69, 90 S.Ct. at 1888 (citations omitted).

Appellant was subject to a maximum potential penalty of only six months. Thus, under the "most relevant" criterion announced by the Supreme Court, the offense is petty.

So in this case we are dealing with a conspiracy designated by the Congress as a misdemeanor *and* for which the maximum penalty is less than six months. I believe that when both of these criteria are met, then, and only then, is there no entitlement to a jury.

This rule has several advantages. It may be applied before any case goes to trial and is easily determinable by reference to the applicable statutes. Moreover, it would prevent the truly petty conspiracy, as seen in this case, from absorbing valuable court time with the necessity of a jury.

I would affirm.