UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Allen STEWART,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Allen STEWART,
Defendant-Appellant.

Nos. 77–5097, 77–5098.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 18, 1977.

Decided Jan. 5, 1978.

Michael R. Lipscomb, Barry E. Hardin, Henderson, Tenn., for defendants-appellants.

W. J. Michael Cody, U. S. Atty., Devon L. Gosnell, Asst. U. S. Atty., Memphis, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, ENGEL, Circuit Judge, and CECIL, Senior Circuit Judge.

ENGEL, Circuit Judge.

Following an altercation which took place on October 27, 1975, at Shiloh National Military Park, Shiloh, Tennessee, Michael Allen Stewart and his father, Thomas Allen Stewart, were charged with assaulting by striking, beating or wounding one Monty Ryan Waddell, in violation of 18 U.S.C. §§ 113(d) and 2.

In separate, non-jury trials, both defendants were convicted. Michael Stewart was tried before the district court, while Thomas Stewart elected to be tried before the United States Magistrate. *See* 18 U.S.C. § 3401. Upon appeal Michael Stewart claims that the trial court abused its discretion in not granting a motion for a continuance when his retained counsel could not be present for the trial, requiring him to obtain substitute counsel. Thomas Stewart asserts that the trial court erred in allowing into evidence certain photographs which, it is claimed, inaccurately portrayed the physical condition of Mr. Waddell after the affray. He further claims that the evidence was insufficient to support his conviction. Upon a review of the record, the court finds these contentions to be without merit.

■ Finally, both defendants claim that they were entitled to a trial by jury and that hence their non-jury convictions cannot stand.[1] Upon consideration, we conclude that an offense under 18 U.S.C. § 113(d) is a petty offense and that the defendants had no constitutional right to a jury trial.[2]

We note at the outset that, for purposes of the constitutional guarantee of trial by jury, the task of delineating petty and serious offenses is not an easy one:

1. Originally counsel for both defendants filed a motion to withdraw the request for a jury trial and for trial before the district judge. In addition, Thomas Allen Stewart filed a waiver of trial in the district court in which he consented to be tried by a United States Magistrate. Neither defendant, however, appears to have personally signed a waiver which expressly waived the right to jury trial as called for under 18 U.S.C. § 3401(b), Rule 3(b), Rules of Procedure for the Trial of Minor Offenses before United States Magistrates, and Rule 23(a), Federal Rules of Criminal Procedure.

2. In a federal prosecution, a defendant's right to a jury derives from two sources. With respect to the federal judiciary, the Constitution provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." U.S. Const., art. III, § 2, cl. 3. The Sixth Amendment also states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury . . . ." Neither constitutional provision preserves the right for petty offense prosecutions, because petty offenses are neither "Crimes" within the meaning of Article III, *Schick v. United States,* 195 U.S. 65, 68–70, 24 S.Ct. 826, 49 L.Ed. 99 (1904), nor "criminal prosecutions" within the meaning of the Sixth Amendment, *see Frank v. United States,* 395 U.S. 147, 148, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). *See generally* Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv.L.Rev. 917, 968–75 (1926).

There is no present statutory right to jury trial for petty offenses in the absence of a constitutional requirement. *United States v. Merrick,* 459 F.2d 644 (4th Cir. 1972).

Of course the boundaries of the petty offense category have always been ill-defined, if not ambulatory. In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance. In either case it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions. This process, although essential, cannot be wholly satisfactory, for it requires attaching different consequences to events which, when they lie near the line, actually differ very little.

*Duncan v. Louisiana,* 391 U.S. 145, 160–61, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968).

*Duncan, supra,* held that Louisiana's offense of simple battery, punishable by a maximum of two years' imprisonment, was a serious crime entitling the defendant to a jury trial. And in *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), the Supreme Court went further to hold that no offense can be deemed petty for purposes of determining whether the constitutional right to trial by jury attaches, where the offense is punishable by more than six months' imprisonment. While holding, therefore, that an offense calling for a maximum punishment of more than six months was automatically "serious", *Baldwin* does not stand for the proposition, asserted by the government, that offenses which carry a maximum punishment of six months or less are automatically "petty". *United States v. Sanchez-Meza,* 547 F.2d 461, 463 (9th Cir. 1976). Although the maximum statutory penalty is the "most relevant" objective criterion in the

Sixth Amendment equation, *Baldwin, supra,* 399 U.S. at 68, 90 S.Ct. 1886, it is not the sole criterion.

Earlier Supreme Court decisions recognize a class of minor or petty offenses which were not historically triable by jury and hold that the Constitution preserves the right to a jury as understood and applied in England and colonial America.[3] *District of Columbia v. Clawans,* 300 U.S. 617, 627, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *District of Columbia v. Colts,* 282 U.S. 63, 72–73, 51 S.Ct. 52, 75 L.Ed. 177 (1930); *Patton v. United States,* 281 U.S. 276, 288, 50 S.Ct. 253, 74 L.Ed. 854 (1930); *Callan v. Wilson,* 127 U.S. 540, 549, 8 S.Ct. 1301, 32 L.Ed. 223 (1888). In addition to determining the historical treatment of a particular offense, the Supreme Court has recognized another criterion to be the inherent gravity of the crime. *Colts, supra,* 282 U.S. at 73, 51 S.Ct. 52 (an offense *"malum in se"* is serious); *Callan, supra,* 127 U.S. at 555, 8 S.Ct. 1301. *See also Sanchez-Meza, supra,* 547 F.2d at 462–65; *United States v. Merrick,* 459 F.2d 644, 645 n. 4 (4th Cir. 1972); ABA Standards Relating to Trial by Jury 21 (Approved Draft 1968).

It is clear that both *Duncan* and *Baldwin* counsel our repair to earlier authorities for guidance in deciding applications of the right to particular offenses. *Baldwin, supra,* 399 U.S. at 68–70 & n. 5, 6, 90 S.Ct. 1886; *Duncan, supra,* 391 U.S. at 159–61, 88 S.Ct. 1444.

■ Considering all the criteria bearing on the issue, we are satisfied that there is no constitutional right to a trial by jury for a violation of Section 113(d).

■ As in *Baldwin,* we recognize that the most relevant criterion is the severity of the maximum authorized penalty, which for

---

**3.** Blackstone speaks of summary proceedings:

By a *summary proceeding* I mean principally such as is directed by several acts of parliament (for the common law is a stranger to it, unless in the case of contempts) for the conviction of offenders, and the inflicting of certain penalties created by those acts of parliament. In these there is no intervention of a jury, but the party accused is acquitted or condemned by the suffrage of such person only, as the statute has appointed for his judge. An institution designed professedly for the greater ease of the subject, by doing him speedy justice, and by not harassing the freeholders with frequent and troublesome attendances to try every minute offense.
4 W. Blackstone, Commentaries on the Laws of England 280 (E. Christian ed. 1822).

Section 113(d) is six months' imprisonment and a $500 fine. Also of importance is the fact that Congress itself has specifically classified misdemeanors such as Section 113(d) as petty offenses. 18 U.S.C. § 1(3).[4] We accord great respect to the judgment of Congress and to the "laws and practices of the community taken as a gauge of its social and ethical judgments." *Clawans, supra,* 300 U.S. at 628, 57 S.Ct. at 663; *cited with approval, Duncan, supra,* 391 U.S. at 160, 88 S.Ct. 1444.

Independent of Congress' general classification, our examination of the specific language of Section 113 convinces us even more that Congress has properly and intentionally distinguished Section 113(d) as a crime of minor gravity. Section 113 generally deals with assaults within the maritime and territorial jurisdiction of the United States and in fact creates six separate categories of them:

### § 113. Assaults within maritime and territorial jurisdiction

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

(a) Assault with intent to commit murder or rape, by imprisonment for not more than twenty years.

(b) Assault with intent to commit any felony, except murder or rape, by fine of not more than $3,000 or imprisonment for not more than ten years, or both.

(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.

(d) Assault by striking, beating, or wounding, by fine of not more than $500 or imprisonment for not more than six months, or both.

(e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

(f) Assault resulting in serious bodily injury, by fine of not more than $10,000 or imprisonment for not more than ten years, or both.

■ As can be seen above, the least serious offense is Section 113(e), calling for a fine of not more than $300 or imprisonment for not more than three months for "simple assault," undefined in the statute itself, but no doubt intended to embrace the common law meaning of that term. *See Brundage v. United States,* 365 F.2d 616, 619 (10th Cir. 1966).[5]

■ In subsection (d) involved here, an assault accompanied by striking, beating, or wounding is made punishable by a fine of no more than $500 or imprisonment for no more than six months, or both. In our view at least, the subsection defines simple battery,[6] the same offense involved in *Duncan v. Louisiana.*[7] Although it defines the conduct as "striking, beating, or wounding,"

---

4. 18 U.S.C. § 1 provides:

   Notwithstanding any Act of Congress to the contrary:

       *    *    *    *    *    *

   (3) Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense.

   The significance of Congress' classification of petty offenses under 18 U.S.C. § 1 has been indicated both in *Duncan v. Louisiana, supra,* 391 U.S. at 161, 88 S.Ct. 1444, and in *Baldwin v. New York, supra,* 399 U.S. at 70–71, 90 S.Ct. 1886.

5. At common law, assault was regarded as a petty offense which did not qualify for a jury trial. Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv.L.Rev. 917, 928 (1926).

Section 113(d) is not, however, a common law assault. *See* note 6 *infra.*

6. We do not view Section 113(d) as a type of assault, as that term was known at common law, because by its terms it contemplates some form of contact. *See United States v. Anderson,* 425 F.2d 330, 333 (7th Cir. 1970). *But cf. United States v. Newberne,* 427 F.Supp. 361, 362 (E.D.Ky.1977).

7. Curiously, while *Duncan v. Louisiana* dealt with simple battery, it was not decided upon the nature of the crime itself. *See* 391 U.S. at 162, 88 S.Ct. 1444. That the majority may not at least have conceived that the crime of simple battery itself would be invariably a serious one is apparent from the fact that it rested its decision upon the severity of the punishment rather than the inherent gravity of the offense. *See also State v. Owens,* 54 N.J. 153, 254 A.2d

Section 113(d) requires neither a particular degree of severity in the injury nor that type of specific intent which characterizes the more serious offenses under Section 113. *United States v. Martin*, 536 F.2d 535 (2d Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 167, 50 L.Ed.2d 141 (1976). Indeed, Blackstone expressly defines battery as

> the unlawful *beating* of another. The least touching of another's person wilfully, or in anger, is a battery; for the law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it: every man's person being sacred, and no other having a right to meddle with it, in any the slightest manner.

3 W. Blackstone, Commentaries on the Laws of England 120 (E. Christian ed. 1822) (emphasis added).

Blackstone's characterization of the offense as "the first and lowest stage" of violence fortifies the judgment of Congress that the conduct is a petty offense, especially where the more aggravated forms of it have been separated and made the subject of more serious penalties. *See State v. Maier*, 13 N.J. 235, 99 A.2d 21, 23–25 (1953).

Finally, where the threshold of criminal responsibility is so low, and the maximum penalty attendant to the conduct relatively light, we conclude that in the absence of some clear historical precedent,[8] the offense is not in common understanding a serious one. It encompasses the kind of conduct which is common enough in daily life, although universally disapproved. Society's knowledge of a person's conviction of simple assault and battery carries with it perhaps the inference that the defendant was quarrelsome or ill-tempered, but without more does not usually attribute to him any more serious or lasting opprobrium.

■ As observed in *Duncan v. Louisiana*,

> So-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions. There is no substantial evidence that the Framers intended to depart from this established common-law practice, and the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive nonjury adjudications.[9]

391 U.S. at 160, 88 S.Ct. at 1453.

We find it therefore neither unreasonable nor violative of the defendants' rights under the Sixth Amendment that Congress should, by its classification, have concluded that the prompt and simple resolution of such a common and minor offense outweighed any benefit which would have resulted from an extension of the right to prosecutions under Section 113(d).

Affirmed.

---

97 (1969), *cert. denied*, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970); *State v. Wheeler*, 252 A.2d 455 (Me.1969).

**8.** Frankfurter and Corcoran state that assault and battery was cognizable under colonial law by three justices without a jury. 39 Harv.L. Rev. at 948. The decisions by the New York Court of Appeals, upon which the authors rely, *id.* at n. 163, do not in fact support the proposition. *See People ex rel. Murray v. Justices*, 74 N.Y. 406 (1878); *People v. Craig*, 195 N.Y. 190, 88 N.E. 38 (1909).

For an unusually exhaustive review of the common law history of battery, see Chief Justice Vanderbilt's opinion, joined by Justice Brennan, in *State v. Maier*, 13 N.J. 235, 99 A.2d 21, 25–29 (1953).

**9.** Like the Supreme Court in *Duncan*, Blackstone recognized the existing logic explaining the difference in trial procedure for petty offenses, although his tongue-in-cheek comments reveal some skepticism as to the benefits of summary justice to the accused. *See note* 3 *supra.*