**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Wesley G. · CRANER, Defendant-Appellant.**

**No. 80–1344.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 10, 1980.

Decided July 27, 1981.

Rehearing and Rehearing En Banc Denied Oct. 16, 1981.

Martha J. Holden, Asst. Federal Public Defender, Sacramento, Cal., for defendant-appellant.

**24**

William Shubb, U.S. Atty., Sacramento, Cal., argued, for plaintiff-appellee; Fern Segal, Asst. U.S. Atty., Sacramento, Cal., on brief.

Before BROWNING, Chief Judge, PECK *, and SNEED, Circuit Judges.

PECK, Circuit Judge.

Appellant Craner was convicted at a bench trial of driving under the influence of alcohol in Yosemite National Park, a violation of regulations promulgated by the Secretary of the Interior.[1] On appeal, Craner contends that the district court erred in denying his motion for a jury trial.

Although Craner was sentenced only to probation and to attendance at traffic school, the offense of which he was charged carries a maximum penalty of six months' imprisonment or a $500 fine, or both, plus payment of costs. 36 C.F.R. § 1.3 (1980). Craner's appeal raises the issue whether this offense is a "serious" one for which the Federal Constitution[2] guarantees a trial by jury.

The Supreme Court has accorded constitutional stature to the common-law rule that "petty" offenses may be tried without the intervention of a jury. *See, e. g., Bloom v. Illinois,* 391 U.S. 194, 210, 88 S.Ct. 1477, 1486, 20 L.Ed.2d 522 (1968); *Duncan v. Louisiana,* 391 U.S. 145, 160, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491; *Callan v. Wilson,* 127 U.S. 540, 557, 8 S.Ct. 1301, 1307, 32 L.Ed. 223 (1888). Traditionally, the Court has looked to the nature of an offense in ranking it "serious" or "petty." *See District of Columbia v. Colts,* 282 U.S. 63, 72–73, 51 S.Ct. 52, 53, 75 L.Ed. 177 (1930); *Callan, supra,* 127 U.S. at 552, 555, 8 S.Ct.

at 1305–1306. The Court has more recently stressed the maximum authorized penalty as an objective criterion of the gravity of an offense. *See Duncan, supra,* 391 U.S. at 161–62, 88 S.Ct. at 1453–1454. In a recent spate of cases involving criminal contempts—crimes for which the punishment is not set by legislatures—the Court looked only to the punishment actually imposed to determine defendants' rights to jury trials. *See Muniz v. Hoffman,* 422 U.S. 454, 476–77, 95 S.Ct. 2178, 2190–2191, 45 L.Ed.2d 319, (1975); *Codispoti v. Pennsylvania,* 418 U.S. 506, 511, 94 S.Ct. 2687, 2690, 41 L.Ed.2d 912 (1974); *Taylor v. Hayes,* 418 U.S. 488, 496, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897 (1974); *Bloom, supra,* 391 U.S. at 211, 88 S.Ct. at 1487; *Cheff v. Schnackenberg,* 384 U.S. 373, 380, 86 S.Ct. 1523, 1526, 16 L.Ed.2d 629 (1966) (plurality opinion). The importance in these cases of the objective criterion of actual punishment, is, however, limited: the Court recognized that criminal contempt is an offense *sui generis.* It is "not a crime of the sort that requires the right to jury trial regardless of the penalty involved." *Bloom, supra,* 391 U.S. at 211, 88 S.Ct. at 1487; *accord, Muniz, supra,* 422 U.S. at 476, 95 S.Ct. at 2190; *Cheff, supra,* 384 U.S. at 380, 86 S.Ct. at 1526 (plurality opinion). In the quest for objectivity, the Supreme Court has not thrown out the rule that an offense may be serious enough, apart from its assigned penalty, that the Constitution would require that it be tried by a jury. *United States v. Sanchez-Meza,* 547 F.2d 461, 463–64 (9th Cir. 1976).

An offense is not "serious" because it is severely punished; it is severely punished because it is "serious." The severity of prescribed sanctions is regarded as the best objective indication of the general normative judgment of the seriousness of an offense. *Baldwin v. New York,* 399 U.S. 66,

---

* The Honorable John W. Peck, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. 16 C.F.R. § 4.6 (1980) prohibits driving under the influence of intoxicating liquor or drugs in park areas.

2. Article III, governing the federal judiciary, provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment says that "[i]n all criminal prosecutions, the accused shall enjoy the right to a ... trial, by an impartial jury...."

68, 90 S.Ct. 1886, 1887, 26 L.Ed.2d 437 (1970) (plurality opinion). The extent of possible punishment does not, however, alone determine whether an offense is serious or petty. Although Congress has established the sanctions of six months' imprisonment or $500 in fines as the bright line between serious and petty offenses, see 18 U.S.C. § 1(3), the Supreme Court has not found "talismanic significance" in this formula when determining whether a constitutional right to a jury trial exists. *Muniz, supra,* 422 U.S. at 477, 95 S.Ct. at 2190. Inquiry into the seriousness of an offense does not end where Title 18 begins. Otherwise the constitutional right to a jury trial would exist only at the sufferance of the legislative branch.

Nothing in the plurality opinion in *Baldwin,* on which the government particularly relies, is to the contrary. Justice White, writing for three members of the Court in *Baldwin,* stated that "a potential sentence of more than six months' imprisonment is sufficiently severe by itself to take the offense out of the category of 'petty'." No member of the Court expressed the view that a lesser potential sentence requires classification of an offense as petty. On the contrary, Justices Black and Douglas, who concurred only in the judgment in *Baldwin,* thought that the Constitution guaranteed the right to a jury trial of all crimes. *See* 399 U.S. at 74–75, 90 S.Ct. at 1891 (concurring opinion).

This is not disingenuous interpretation. It is the explanation of *Baldwin* offered by the Court itself. *See Codispoti, supra,* 418 U.S. at 512 n. 4, 94 S.Ct. at 2691 n. 4.

Authorized punishment reflects the seriousness of an offense. It does not determine it. To gauge the seriousness of an offense, the Supreme Court has in recent years looked to the authorized penalty *and* to the "relevant rules and practices followed by the federal and state regimes." *Muniz, supra,* 422 U.S. at 476, 95 S.Ct. at 2190. *See also Duncan v. Louisiana, supra,* 391 U.S. at 159–61, 88 S.Ct. at 1452–1453.

Without question, the maximum penalty for an offense is usually more important than any other criterion used in characterizing the offense as serious or petty. As a rule, the penalty best shows, or is taken to best show, the public's measure of the gravity of an offense. *Frank v. United States,* 395 U.S. at 147, 149, 89 S.Ct. 1503 at 1505, 23 L.Ed.2d 162. In the present case, however, Congress, as the public's surrogate, did not set the six-month, $500 maximum penalty as the appropriate one for the specific offense of driving under the influence (DUI). The Secretary of the Interior did. *See* 36 C.F.R. § 1.3 (1980). The penalty for drunken driving is the severest one the Secretary may authorize. *See* 16 U.S.C. § 3. It is the same penalty authorized for a myriad of offenses—from climbing Mount Rushmore (16 C.F.R. § 7.77 [1980]) to digging for bait in a national park (16 C.F.R. § 2.13(d) [1980]). *See* 16 C.F.R. § 1.3 (1980). We cannot hazard that the Secretary's indiscriminate authorization of this penalty for varied offenses, or Congress's general limitation on the sentences the Secretary may authorize, represents a considered legislative judgment of the gravity of the offense of DUI.

Craner argues that there is an additional consequence of a DUI conviction beyond the sentence he faced: he could lose his California driver's license. The government contends that under *United States v. Hamdan,* 552 F.2d 276 (9th Cir. 1977), this Court must refuse to consider "collateral consequences" of a conviction in determining if the Constitution requires a charge to be tried to a jury. In *Hamdan,* two defendants were charged with making false statements in documents filed with the Immigration and Naturalization Service. The crime was punishable with six months' imprisonment or a fine of $1,000, or both. A divided panel of this Court held that the possibility of imposition on an individual of a fine greater than $500 automatically takes an offense from the "petty" class; the court therefore ruled that the defendants were entitled to a jury trial. *Muniz, supra,* was distinguished: in *Muniz,* the defendant to a criminal contempt charge was a 13,000-member union. The $10,000 fine

imposed on the union was paltry when reckoned per capita. Denial of a jury trial was upheld. In *Hamdan*, the possible fines per capita were $1,000; this court, stressing the need for a standard of seriousness applicable to all individual defendants, adopted 18 U.S.C. § 1(3)'s $500 figure as the fine beyond which any offense became a serious one. See 552 F.2d at 278–79. The specific holding of *Hamdan* was that the court would not look to an individual defendant's ability to pay to decide whether a maximum fine itself rendered a crime serious.

*Hamdan* does not forbid consideration of the future legal significance of a conviction in deciding whether an offense is a serious one. Although a license revocation is itself a regulatory, not a punitive action, *United States v. Best*, 573 F.2d 1095, 1099 (9th Cir. 1978), the threat of loss of a license as important as a driver's license, a deprivation added to penal sanctions, is another sign that the DUI defendant's community does not view DUI as a petty offense. It is irrelevant to the determination of Craner's rights to a jury trial whether this loss has occurred, will surely occur, or simply could occur. Cf. *Duncan, supra*, 391 U.S. at 159–60, 88 S.Ct. at 1452–1453 (possible penalty, not the one actually imposed, is the gauge of a locality's "social and ethical judgments" of the gravity of an offense).

Federal and state precedent and practices counsel ranking DUI as a "serious" crime. In 1930 the Supreme Court held that the analogous offense of reckless driving was a serious offense within the constitutional guarantee of trial by jury. See *District of Columbia v. Colts*, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930). The Court in *Colts* reasoned that reckless driving was both indictable at common law[3] and *malum in se*, and hence, serious.

There is no legally meaningful distinction between the present case and *Colts*. The government, therefore, understandably argues that *Colts* is superannuated and, as precedent, abandoned. Yet *Colts* was cited by Justice White without disapproval in *Baldwin*—the very case that supposedly doomed "the nature of the offense" as the determinant of the right to a jury trial. See *Baldwin, supra*, 399 U.S. at 69 n. 6, 90 S.Ct. at 1888 n. 6 (plurality opinion). This Court has rejected the argument that the *Colts* line of cases should not be followed; the Supreme Court has never repudiated *Colts*, although it has had many opportunities to do so. *United States v. Sanchez-Meza, supra*, 547 F.2d at 463–64. See also *United States v. Stewart*, 568 F.2d 501, 503 (6th Cir. 1978); *United States v. Woods*, 450 F.Supp. 1335, 1342 (D.Md.1978); *Brady v. Blair*, 427 F.Supp. 5, 9 (S.D.Ohio 1976).[4]

**3.** A questionable proposition. The Court cited *United States v. Hart*, 26 Fed.Cas. 193 (D.Pa. 1817), which flatly stated that driving a carriage wildly through crowded city streets was a breach of the peace indictable at common law. The Court also cited *State v. Rodgers*, 91 N.J.L. 212, 102 A. 433 (1917), which held that simple DUI (not compounded by noticeably dangerous driving) was not such a breach of the peace.

The utility of applying the standard of "indictability at common law" to the present case is doubtful. The phrase "indictable at common law," standing alone, has little meaning. In the fourteenth century, even the pettiest crimes were indictable at common law. Frankfurter & Corcoran, *Petty Federal Offenses and the Right to Trial by Jury*, 39 Harv.L.Rev. 917, 923 (1926). From Tudor times, Parliament reacted to the problem of overcrowded criminal dockets by excepting specific offenses from jury procedures. *Id.* at 925–26. ("*Plus ça change* ....") The Congressional attempt in 18 U.S.C. § 1 to define the class of petty offenses by a general formula does not follow this traditional model. See *id.* at 927.

Even if the era of the adoption of the Constitution is taken as the relevant epoch of the common law, we doubt that there is a common-law analog to the modern offense of DUI. Around the time of the American Revolution, violations of liquor laws and traffic laws were often tried before magistrates alone. *Id.* at 928. But cars are not horses, and the traffic and speeds of the eighteenth century are not those of the twentieth. Even Frankfurter and Corcoran, who exhaustively document colonial history, "conclude by saying that history presents a body of experience expressive of the judgment of its time, but does not save Congress nor the Supreme Court from the necessity for judgment in giving past history present application." *Id.* at 982.

**4.** *But see, contra, Justiniano Matos v. Gaspar Rodriguez*, 440 F.Supp. 673, 676–77 (D.P.R. 1976), a reckless driving case in which the district court ruled that *Baldwin* had, in effect,

At least seven of the states in this Circuit guarantee the DUI defendant the right to a jury trial.[5] This is a better objective gauge of the common perception of the gravity of the offense than the broad formula for classifying crimes found in 18 U.S.C. § 1. It accords with the relevant state and federal practice that Craner have the jury trial he seeks.

This holding is not an impractical one. Given the comparative rarity of federal DUI prosecutions, the administrative benefits afforded by summary proceedings in these cases are slight, particularly since a high rate of waiver of jury trials may be expected.[6] We cannot say that as a constitutional matter these benefits outweigh defendants' interests in being tried by their peers if they so choose.

Reversed and remanded.

SNEED, Circuit Judge, concurring in the result only:

I concur in the result reached by the majority.

I agree that neither *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), nor *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), hold that *all* offenses with respect to which the authorized prison term is six months or less and the fine $500 or less are "petty." Their holdings point the other way, *viz.*, offenses carrying terms in excess of six months and fines of more than $500 *must* be tried before a jury. The upshot is that the latter type of offense is *never* "petty," while the former *usually* is. It is also true that this court in *United States v. Sanchez-Meza*, 547 F.2d 461 (9th Cir. 1976), recognized that factors other than the maximum sentence possible are relevant in determining whether an offense is "petty."

I also agree with the majority that under the circumstances of this case the maximum penalty imposed by the Secretary of Interior does not, as the majority observes, represent the considered legislative judgment of the gravity of the offense. Nor does it, in my opinion, represent a considered executive judgment of the gravity. The Secretary could impose no greater penalty; the

---

overruled *Colts*. This holding not only mistakes a plurality opinion for a majority one, it also misreads the plurality opinion, which was pointedly narrowed by its author, who wrote: "In this case, we decide only that a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of 'petty'." *Baldwin, supra*, 399 U.S. at 69 n. 6, 90 S.Ct. at 1888 n. 6 (opinion of White, J.)

Under the court's reasoning in *Justiniano Matos*, a legislature could for strategic purposes take universally reprehended crimes, as, for example, rape or child molesting, out of the constitutional guarantees of jury trials by simply reducing the sentences authorized for the offenses.

5. The right is guaranteed under the following authorities:
Alaska: *Baker v. Fairbanks*, 471 P.2d 386 (Alaska 1970).
Arizona: *Rothweiler v. Superior Ct.*, 100 Ariz. 37, 410 P.2d 479 (1966).
California: *Mills v. Municipal Ct.*, 10 Cal.3d 288, 110 Cal.Rptr. 329, 515 P.2d 273 (1973); Cal.Const. art. 1, § 16; Cal.Penal Code § 689; Cal.Veh.Code § 23120.
Hawaii: *Baldwin v. New York, supra; State v. Shak*, 51 Haw. 612, 466 P.2d 422, *cert. denied*, 400 U.S. 930, 91 S.Ct. 191, 27 L.Ed.2d

190 (1970) (applied to Hawaii Rev.Stat. § 291-4, which authorizes up to one year's imprisonment as sentence for DUI).
Idaho: *Miller v. Winstead*, 75 Idaho 262, 270 P.2d 1010 (1954) (held that under former law, defendant had right to jury trial de novo on appeal from municipal court judgment); Idaho Code §§ 19–1901, 19–1902, 49–1102, 49–1104.
Montana: Mont.Rev.Codes Ann. §§ 46–16–102, 46-17–201, 46–17–403.
Oregon: *Brown v. Multnomah Cty. Dist. Ct.*, 280 Or. 95, 570 P.2d 52 (1977) (Oregon Constitution requires jury trial of DUI charge despite legislative effort to "decriminalize" first-offense DUI).
The present case does not raise the question whether a legislature may effectively "decriminalize" DUI, so that deprivation of a jury trial would not violate constitutional guarantees.
Washington: *State v. Wicke*, 91 Wash.2d 638, 591 P.2d 452 (1979).
A recent annotation shows only five states in the United States denying defendants the right to a jury trial on DUI charges. *See* Annot., 16 A.L.R.3d 1373 (1967 & 1980 Supp.)

6. *See Baldwin, supra*, 399 U.S. at 74 n. 22, 90 S.Ct. at 1891 n. 22 (plurality opinion).

range of penalties available to him was too narrow. As a consequence, the DUI offense and digging for bait in a national park are, as the majority point out, given the same maximum penalty.

Under these circumstances it is appropriate to diminish the importance of the maximum penalty in determining whether the DUI offense is "petty" and focus on the additional consequences that attend conviction of this offense. Under California law these consequences are substantial. *See* Cal.Veh.Code §§ 13210, 13352, 13352.5. Their substantiality justifies treating the DUI offense as "serious." Had the maximum penalty here available reflected considered legislative or executive judgment I would be inclined to treat the DUI offense as "petty" notwithstanding these consequences. Put another way, a maximum penalty of six months and a $500 fine in the absence of extraordinary circumstances such as are present in this case should indicate the offense is petty.

The flaw I find in the majority opinion is that it is open to the interpretation that the maximum penalty is only one of several possible factors of approximately equal weight to be employed in determining whether an offense is petty. I write to indicate that that interpretation is not my understanding of the law.