UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Stuart ARBO,
Defendant-Appellant.

No. 81–1570X.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 1982.

Decided Sept. 24, 1982.

Thomas W. Corr, Sacramento, Cal., argued, for defendant-appellant; Clyde M. Blackmon, Blackmon, Wasserman, Blicker, Ruthenbeck, Sacramento, Cal., on brief.

Louis Demas, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before WALLACE and HUG, Circuit Judges, and BROWN,* District Judge.

WALLACE, Circuit Judge:

Arbo appeals his misdemeanor conviction for interference with forest officers in the performance of their official duties, a violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.3 (1981). Arbo makes two claims on appeal. First, he asserts that he was denied his sixth amendment right to a jury trial. Second, he claims that the district court lacked jurisdiction over the alleged offense because the incident giving rise to the charges occurred on state rather than federal land. We affirm.

I

Wright, a ranger with the United States Forest Service, and Bassett, a Mineral Assistant from the Big Bar Land Office, visited Arbo's "Lazy Mae" claim in the Shasta-Trinity National Forest in order to make a compliance inspection of certain mining operations. At the claim site, Wright and Bassett encountered Arbo. They disagreed about the right of the government agents to inspect Arbo's claim and the structures on it. The discussion ended when Arbo refused to allow the inspections and directed two armed employees to escort the government agents off the property.

Arbo and the two employees were charged with interference with forest officials in the performance of their official duties in violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.3. The district judge denied a motion brought by Arbo and his employees for a jury trial. Arbo was found guilty of the offense while the employees were acquitted. Before sentencing, Arbo filed a motion to dismiss for lack of subject matter jurisdiction, but the district court never expressly ruled on it.

II

36 C.F.R. § 261.3(a) prohibits "[t]hreatening, resisting, intimidating, or interfering with any forest officer engaged in ... the performance of his official duties in the protection, improvement, or administration of the National Forest System ...." A violation is punishable by a fine of not more than $500 or imprisonment for not more than six months, or both. 16 U.S.C. § 551. Arbo's appeal raises the issue of whether this offense is a "serious" one for which the Constitution guarantees a trial by jury.

The Supreme Court has accorded constitutional stature to the common-law rule that "petty" offenses may be tried without a jury. *United States v. Craner*, 652 F.2d 23, 24 (9th Cir. 1981) (*Craner*); *see, e.g., Duncan v. Louisiana*, 391 U.S. 145, 160, 88 S.Ct. 1444, 1453, 29 L.Ed.2d 491 (1968). In determining the line between "petty" and "serious" offenses for purposes of the sixth amendment right to jury trial, the Supreme Court has more recently emphasized the maximum authorized penalty as an objective criterion of the gravity of the offense. *Craner, supra,* 652 F.2d at 24. "In deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense ... and we have found the most relevant such criteria in the severity of the maximum authorized penalty." *Baldwin v. New York*, 399 U.S. 66, 68, 90 S.Ct. 1886, 1887, 26 L.Ed.2d 437 (1970) (plurality opinion) (citations omitted). Thus, the Court has held that offenses carrying terms in excess of six months and fines of more than $500 must be tried before a jury. *Craner, supra,* 652 F.2d at 27 (Sneed, J., concurring); *see Baldwin v. New York, supra; Codispoti v. Pennsylvania*, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974). Although offenses with an authorized prison term of six months or less and

* Honorable Wesley E. Brown, United States District Judge, District of Kansas, sitting by designation.

a fine of $500 or less will usually be considered "petty," there may exist extraordinary circumstances which indicate that the offense is "serious" despite its assigned penalty. *Craner, supra,* 652 F.2d at 27–28 (Sneed, J., concurring).

Such was the case in *Craner* in which the defendant was convicted of driving under the influence of alcohol, an offense which, like the one in this case, carried a maximum penalty of six months' imprisonment or $500 fine, or both. 36 C.F.R. § 1.3 (1981). The court emphasized that the penalty best shows "the public's measure of the gravity of an offense." *Craner, supra,* 652 F.2d at 25. Because the penalty in *Craner* was set by the Secretary of the Interior, rather than by Congress, however, there was no assurance that the penalty represented a considered legislative judgment of the gravity of the offense of driving under the influence. *Craner, supra,* 652 F.2d at 25. Given the lack of legislative judgment, there was good reason "to diminish the importance of the maximum penalty in determining whether" the offense was "petty" and to "focus on the additional consequences that attend[ed] conviction of [the] offense." *Id.* at 28 (Sneed, J., concurring). The "additional consequence" which permitted the driving under the influence conviction in *Craner* to be classified as "serious," was that the defendant faced the possibility of having his license revoked by the State of California because of his conviction. *Id.* at 25–26, 28.

Arbo does not argue that the penalty prescribed in 16 U.S.C. § 551 does not represent a "considered legislative judgment of the gravity of the offense." *Id.* at 25. Here, the penalty of six months' imprisonment or a $500 fine, or both, was set by Congress. Furthermore, Arbo does not point to any collateral consequences which could seriously impact upon him because of his conviction. Rather, Arbo only argues that interference with a federal officer in the course of his official duties is *malum in se* and therefore must be considered a "serious" offense.

Inquiry into whether the offense is morally offensive and *malum in se* or merely *malum prohibitum* is one factor often employed in determining whether an offense is petty. *See, e.g., District of Columbia v. Clawans,* 300 U.S. 617, 625, 57 S.Ct. 660, 662, 81 L.Ed. 843 (1937); *District of Columbia v. Colts,* 282 U.S. 63, 73, 51 S.Ct. 52, 53, 75 L.Ed. 177 (1930); *United States v. Sanchez-Meza,* 547 F.2d 461, 464 (9th Cir. 1976). We need not address whether an offense found to be *malum in se* must for that reason alone be considered "serious," since we conclude that the offense Arbo was convicted of was not morally offensive and thus not *malum in se.*

Arbo argues that because he could have been charged with forcible interference with federal officers pursuant to 18 U.S.C. § 111 (a felony under federal law), interference with federal officers under 16 U.S.C. § 551, for which he was charged, should be considered *malum in se.* Arbo has failed to perceive the distinction between 18 U.S.C. § 111 and 16 U.S.C. § 551. The purpose of the latter section, as stated in its text, is to regulate the occupancy and use of the public forests and to preserve them from destruction. Section 551 authorizes the promulgation of reasonable regulations to carry out that stated purpose. *See United States v. Weiss,* 642 F.2d 296, 298 (9th Cir. 1981). Such a statutory purpose is clearly *malum prohibitum* in nature. On the other hand, 18 U.S.C. § 111 includes the additional element of force, *see United States v. Cunningham,* 509 F.2d 961, 963 (D.C. Cir. 1975), thus justifying its classification as a felony. Just because Arbo could possibly have been charged with a violation of section 111 does not alter the fact that the offense for which he was charged and convicted is regulatory in nature.

We conclude Arbo was not unconstitutionally denied his right to a jury trial because he was convicted under a regulatory or *malum prohibitum* statute with a prescribed penalty which does not by itself indicate that the offense is serious. The penalty usually indicates whether the offense is petty. *Craner, supra,* 652 F.2d at 27–28 (Sneed, J., concurring). It is so here.

Arbo has not argued any extraordinary circumstances which make the offense serious despite the established sanctions. Thus, the offense is properly considered a petty one for which the Constitution does not grant a right to trial by jury.

### III

The basis for Arbo's motion to dismiss for lack of jurisdiction was that his mining operation was located entirely on land belonging to the State of California. Arbo does not waive this objection by failing to raise it at trial. Lack of subject matter jurisdiction may be raised at any time. Fed. R. Crim. P. 12(b)(2); *United States v. Heath,* 509 F.2d 16, 19 (9th Cir. 1974). The government argues that Arbo has failed to establish that the land on which his mining operation was located belonged to the State of California rather than to the United States. We need not decide who has this burden of proof or whether the burden has been met. The record is clear that the land adjacent to Arbo's claim is federal. We conclude that regardless of whether the United States held title to the land on which the incident arose, it had the power to regulate Arbo's conduct.

In *United States v. Lindsey,* 595 F.2d 5 (9th Cir. 1979), the defendant was charged with violating regulations issued by the Secretary of Agriculture regarding camping and building a fire without permits. These regulations, as the ones in the instant case, were issued pursuant to 16 U.S.C. § 551 respecting the National Forest System. *Id.* at 6 n. 1. We held that even though the State of Idaho held title to the land on which the violations occurred, such ownership did not deprive the United States of regulatory control over the defendant's conduct. In discussing the scope of Congress' regulatory authority under the property clause, U.S. Const. art. IV, § 3, cl. 2, we stated that "[i]t is well established that this clause grants to the United States power to regulate conduct on non-federal land when reasonably necessary to protect adjacent federal property or navigable waters."

*Id.* at 6. In *Kleppe v. New Mexico,* 426 U.S. 529, 538, 96 S.Ct. 2285, 2291, 49 L.Ed.2d 34 (1976), the Court observed that the "power granted by the Property Clause is broad enough to reach beyond territorial limits." Thus, in this case we need not reach the issue of whether the incident in question occurred on state rather than federal land, but rather decide it based upon whether the government agents' actions in confronting Arbo were "reasonably necessary to protect adjacent federal property."

Arbo argues that a compliance inspection of a mining claim on his non-federal land is not reasonably necessary to protect the adjacent federal land. The government agents, however, testified that the scope of their inspection included sanitation facilities, garbage treatment, tree cutting and fire prevention. Clearly, inspection of these conditions is reasonably necessary to protect adjacent federal property. Arbo points to no evidence showing that these were not the objectives of the compliance inspection. Furthermore, even Arbo admitted upon cross-examination that the entirety of his claim was not on state property.

We conclude that the officers' compliance inspection was reasonably necessary to ensure that practices on Arbo's claim did not pose a fire or health risk to adjacent federal land, regardless of whether the claim was on state land. Thus, under *Lindsey,* Arbo's interference with the officers is not beyond the jurisdiction of the United States.

Arbo argues alternatively that because his mining claim was on state land, the government failed to establish beyond a reasonable doubt that the government agents were carrying out official duties, an essential element of 36 C.F.R. § 261.3. That regulation makes interference with a forest officer punishable only if that officer is engaged in the "performance of his official duties in the protection, improvement, or administration of the National Forest System . . . ." If the evidence shows that a compliance inspection on state land is undertaken for the purpose of protecting adjacent federal land, there is no doubt that the government agents carrying out that in-

spection are engaged in the performance of their official duties as required under section 261.3.

■ The applicable standard for reviewing the sufficiency of the evidence to support a criminal conviction is whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). This test applies to both jury and non-jury trials. *Id.* at 317 n. 8, 99 S.Ct. at 2788 n. 8; *United States v. Spears,* 631 F.2d 114, 117 (9th Cir. 1980). Based on the undisputed testimony of the officers concerning the scope of their compliance inspection, we conclude that there was sufficient evidence from which a rational trier of fact could have found that the confrontation between Arbo and the government agents occurred while they were engaged in the performance of their official duties.

AFFIRMED.