(No. 42495.—▇▇▇▇▇▇▇)

THE CITY OF CHICAGO, Appellee, *vs.* STAUGHTON LYND *et al.,* Appellants.

*Opinion filed December 4, 1970.*

206

DENNIS BLACK and JAMES H. SCHINK, both of Chicago, (DAVID GOLDBERGER, of counsel,) for appellants.

RICHARD L. CURRY, Corporation Counsel, of Chicago, (MARVIN E. ASPEN and RICHARD F. FRIEDMAN, Assistants Corporation Counsel, of counsel,) for appellee.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

After a jury trial in the Cook County circuit court, defendants were found guilty of interfering with a police officer in the performance of his duties under section 11—33 of the Municipal Code of Chicago. Each was fined $500. A constitutional question gives us jurisdiction. Supreme Court Rule 603. 43 Ill.2d R 603.

The relevant facts are undisputed. On Tuesday, August

27, 1968, 200-300 marchers, including defendants, walked from a church at Wabash Avenue and Huron Street to the Chicago International Amphitheatre where the 1968 Democratic National Convention was then being held. The group had previously advised the Chicago Police Department of their intention to march and were accompanied by police officers who showed them the route. When the marchers arrived at 39th and Halsted streets, they were informed by Deputy Police Chief Hartnett that Halsted Street had been closed from 39th Street to 47th Street in preparation for the beginning of the next session of the convention. This closing was pursuant to a plan developed in the weeks preceding the convention by the heads of various governmental agencies, including the Chicago Police and Fire Departments, the Secret Service, the National Guard, the Army, and the Department of Streets and Sanitation. Special security procedures and traffic regulations were set up to control the traffic to and from the amphitheatre and to protect the delegates, reporters and spectators attending the convention. As part of this plan, Halsted Street, immediately adjacent to the amphitheatre on the east, was to be closed to vehicular and pedestrian traffic approximately two hours before each session of the convention, during the sessions and for such period following the sessions as required for such traffic to dissipate.

The marchers agreed to move a few blocks west to an open area where they remained throughout the night, their numbers declining at times to ten or fifteen. At about 4:00 A.M., August 28, the remaining marchers moved back to Halsted Street which had been re-opened following the end of the Tuesday evening session. They formed a picket line on the east side of Halsted Street and marched single-file. The conduct of the group was at all times peaceful and orderly. The sidewalk was not blocked.

At 10:00 A.M., Chief Harnett ordered the closing of Halsted Street in preparation for the next session at noon.

Traffic was rerouted and the street was cleared of pedestrians. The marchers, now approximately 60 strong, were the only ones remaining at 10:15 when they were told to disperse and leave the area or face arrest. This announcement was made two or three times using an electric bullhorn and some members of the group were told individually to leave. At this time, about one half of the marchers left, and 31 persons continued to picket. After additional warnings, those who remained were arrested without resistance.

Section 11—33 of the Municipal Code of Chicago provides in pertinent part: "a) Any person who knowingly shall resist or obstruct the performance of one known to the person to be a peace officer of any authorized act within his official capacity or shall knowingly interfere or prevent a peace officer from discharging his duty as such officer * * * shall be fined not less than $25.00 nor more than $500.00."

The primary issue presented is whether the officers' act or duty, which defendants were convicted of obstructing, was constitutionally permissible insofar as it may have restricted the exercise of their first amendment rights of speech and assembly. Picketing and marching, if peaceful and orderly, are entitled to first amendment protection as methods of expression. (*Gregory* v. *City of Chicago,* 394 U.S. 111, 112, 22 L. Ed. 2d 134, 89 S. Ct. 946, *Shuttlesworth* v. *City of Birmingham,* 394 U.S. 147, 22 L. Ed. 2d 162, 89 S. Ct. 935.) However, "the First and Fourteenth Amendments [do not] afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech" (*Cox* v. *Louisiana,* 379 U.S. 536, 555, 13 L. Ed. 2d 471, 484, 85 S. Ct. 453; *Shuttlesworth* v. *City of Birmingham,* 394 U.S. 147, 22 L. Ed. 2d 162, 89 S. Ct. 935.) "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech elements

can justify incidental limitations on First Amendment freedoms." (*United States* v. *O'Brien,* 391 U.S. 367, 376, 20 L. Ed. 2d 672, 679, 88 S. Ct. 1673.) The Supreme Court has held that where first amendment rights are involved, governmental regulation is permitted only if it furthers an important or substantial governmental interest, is unrelated to the suppression of free expression, and is no greater than is essential to the furtherance of that interest. *United States* v. *O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673.

Two substantial governmental interests are here apparent: (1) adequate provision for the safety of the delegates and others who had gathered for the convention and (2) maintenance of the free flow of traffic to and from the amphitheatre. Defendants' basic position is that the order closing the sidewalk along the east side of Halsted Street was not reasonably necessary to the furtherance of these interests because defendants' conduct posed no threat of violence or disorder, and the free flow of traffic was not obstructed. The peaceful and orderly character of the demonstration is, in our judgment, irrelevant since the police order was not directed at the defendants' conduct and the street would have been closed at 10:00 A.M. whether or not these particular individuals were present. In this respect, the instant case differs from those cases in which the arrest of demonstrators was motivated by the disorderly nature or effect of their activities. See, *e.g., Gregory* v. *City of Chicago,* 394 U.S. 111, 22 L. Ed. 2d 134, 89 S. Ct. 946; *Adderley* v. *Florida,* 385 U.S. 39, 17 L. Ed 2d 149, 87 S. Ct. 242; *Shuttlesworth* v. *City of Birmingham,* 382 U.S. 87, 15 L. Ed. 2d 176, 86 S. Ct. 211; *Cox* v. *Louisiana,* 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453; *Edwards* v. *South Carolina,* 372 U.S. 229, 9 L. Ed. 2d 697, 83 S. Ct. 680; *People* v. *Meyer,* 44 Ill.2d 1; *City of Chicago* v. *Joyce,* 38 Ill.2d 368.

The testimony of those attending the preconvention planning sessions reveals that the establishment of a "se-

cured area" directly behind the amphitheatre, including Halsted Street and the sidewalks along that street, was deemed an essential element in the overall plan to provide safe and expeditious access to the convention. In view of the obvious difficulties involved in policing this extraordinary event, including the optimum deployment of a limited number of police officers for security and traffic control, we find the order in question manifestly reasonable and necessary to further substantial governmental interests.

It is also clear from the record that the decision to close Halsted Street was not motivated by a desire to suppress free expression by these defendants or any other group. The decision as to the time and place of closing had been made before defendants had decided to march, and was dictated solely by the timing and location of the convention. Peaceful demonstrations were permitted at other times and places and defendants' march at this particular place was undisturbed for approximately six hours prior to the 10:00 A.M. closing on August 28.

Defendants contend further that the application of the police order to close was discriminatory. This contention is based on the fact that "special exceptions" were made which allowed local residents to proceed to their homes, welfare recipients to pick up checks from a welfare office on Halsted, and deliverymen to make deliveries to some of the neighborhood stores. These exceptions were made to prevent undue hardship and unreasonable interference with normal neighborhood activities and were manifestly reasonable and non-discriminatory.

Defendants allege that police discretion under the closing plan was impermissibly broad. The testimony of Deputy Chief Hartnett establishes that approximately 1½ to 2 hours were required to barricade Halsted Street and reroute traffic in preparation for the start of a convention session. After the street had been closed on the morning of August 28, defendants were the only ones who refused to leave. The

order to move on and the subsequent arrest involved no abuse of discretion. Those persons obstructing the police officers' lawful duty to clear the street were uniformly arrested.

Finally, defendants argue that their convictions are not supported by the record because the verbal order was not lawful and there was no evidence of interference. This contention is without merit, for obedience to a policeman's verbal order is no less necessary simply because it is oral and not explicitly stated in statute or ordinance. Since we have previously found the police order to be reasonable under the existing circumstances, defendants' refusal to leave in compliance with that order undeniably interfered with the police officers' duty to clear the area.

The judgment of the Cook County circuit court is accordingly affirmed.

*Judgment affirmed.*