## 34633. THE STATE v. BOONE.

UNDERCOFLER, Presiding Justice.

This appeal by the state challenges dismissal of criminal misdemeanor charges against Boone for leading

approximately 25 people in a demonstration on state property known as the Georgia World Congress Center. The state's indictment was brought under Code Ann. §§ 91-134 and 91-9908 (Ga. L. 1976, pp. 471-473, as amended), which prohibits interference with and disruption of activities and operations on all state property and in all state buildings.[1] It accused Boone of leading the group in singing, talking in loud voices, standing and kneeling in close proximity so as to block the

---

[1]Ga. L. 1976, pp. 471-473, as amended, provides in pertinent part as follows: "Section 1. The Georgia Building Authority and its security personnel and members of the Georgia State Patrol and Georgia Bureau of Investigation are hereby authorized and empowered to deny the entrance of any person into or upon any property or building of the Authority or the State when such person's activities are intended to disrupt or interfere with the normal activities and functions carried on in such property or building or have the potential of violating the security of the personnel therein. The Authority and its security personnel and members of the Georgia State Patrol and Georgia Bureau of Investigation are hereby authorized and empowered to deny entrance into or upon any such property or building of any person displaying any sign, banner, placard, poster or similar device. The Authority and its security personnel and members of the Georgia State Patrol and Georgia Bureau of Investigation are hereby authorized and empowered to remove any person from any such property or building when such person's activities interfere with or disrupt the activities and the operations carried on in such property or building or constitute a safety hazard to such property or building or the inhabitants thereof. The authority and power provided herein shall also extend to any property or building utilized by the State or any agency thereof. Any law enforcement officer assisting the Authority or any of its security personnel and members of the Georgia State Patrol and Georgia Bureau of Investigation shall have the same authority and power bestowed upon the Authority by this Act." Code Ann. § 91-134.

flow of pedestrian traffic in that part of the main lobby adjacent to the administrative offices, and of refusing to vacate the property and building where ordered to do so.[2]

Boone rebutted these allegations contending he led the group in prayer over diminishing welfare benefits and employment discrimination in the Center; that State Highway patrolmen and Georgia Building Authority security personnel, removed their hats and respected the prayer period, then ordered the group to leave. Boone argued he had asked to see the manager of the Center and was told to wait while he was summoned. At this point, the officers refused to let the group wait and arrested them. At the preliminary hearing, all charges were dismissed except those against Boone. The order to leave was given only to him. A motion attacking the constitutionality of the statute was filed and argument heard prior to joining issue on the merits. The trial court determined the statute was "facially unconstitutional" as being vague, overbroad and imposed prior restraint on free speech, observing the statute arms security personnel with authority to determine the subjective intent of a party prior to any act being committed; arms them with authority to exclude persons if the guard thinks they pose a threat to security or if they are "merely" displaying banners or placards. These provisions "invite discriminatory application" and restrict free speech and assembly in violation of the Georgia and United States Constitutions.

The state contends it was error to hold the statute unconstitutional. We agree and reverse.

1. The statute is not facially overbroad nor so vague

---

[2]"Section 3. Any person who shall refuse to obey any lawful order of any such security personnel or law enforcement officer issued pursuant to this Act, or any person who shall refuse to vacate any such property or building when requested to do so, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished as for a misdemeanor." Code Ann.. § 91-134. This penalty is also set out in Code Ann. § 91-9908 for refusing orders to leave given pursuant to §§ 91-134 and 91-135.

as to violate First Amendment freedoms of assembly or speech. Art. I, Sec. I, Par. XV, Ga. Const., 1976 (Code Ann.. § 2-115); Art. I, U. S. Const. (Code §§ 1-801, 1-815). Its language clearly seeks to proscribe conduct, not free speech, and ". . . that conduct — even if expressive — falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. . ." Broadrick v. Oklahoma, 413 U. S. 601, 615 (93 SC 2908) (1973). See United States v. Douglass, 579 F2d 545, 550 (1978).Cf. Federal Communications Commission v. Pacifica Foundation, —— U. S. —— (98 SC 3026, 3037) (1978). Further, no constitutional infirmity is created by language in the statute authorizing exclusion of those persons whom a guard, by the exercise of subjective evaluation, determines has the potential of violating the security of personnel or whose activities are intended to disrupt or interfere with the normal activities and functions carried on in the building. Language regarding "intent" is commonly used in statutes regulating conduct.[3] Law enforcement officers must exercise subjective evaluations as part of their duty to protect the public safety, peace,

---

[3]See Jeanette Rankin Brigade v. Chief of Capitol Police, 342 FSupp. 575 (1972) at pp. 587-588, where the court, after striking down a provision of law restricting *all* parades, etc., upon U. S. Capitol grounds, spoke with approval of other provisions of the same statutes which *were enforceable.* ". . . [T]hose who presently go upon the Capitol grounds . . . are subject to other sections of the existing laws regulating conduct within the Capitol grounds which forbid . . . (5) entering or remaining on the floor of either House, or gallery in violation of any rules, or any room with *intent to disrupt* the orderly conduct of official business, (6) uttering loud, threatening or abusive language, or engaging in any disorderly or disruptive conduct anywhere on the grounds *with intent to impede, disrupt, or disturb* the orderly conduct of any session of Congress . . ." (Emphasis supplied.) See 40 USC §§ 193(b)—293(f) (1970).

comfort and convenience from unauthorized conduct. "The state, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. . ." Adderley v. Florida, 385 U. S. 39, 47 (87 SC 242) (1966). The statute, sub judice, proscribes specific conduct. These restrictions are limited and ". . . punish only conduct which disrupts or is about to disrupt normal. . . activities . . ." Grayned v. City of Rockford, 408 U. S. 104, 116 (92 SC 2294) (1972). See Tinker v. Des Moines &c. School Districts, 393 U. S. 503, 514 (89 SC 733) (1969).

2. We do not so narrowly construe the language of the statute authorizing denial of entrance into or upon state property to "any person displaying any sign, banner, placard, poster or similar device . . ." as prohibiting entry merely because such signs or placards are present. This prohibition must be construed together with those sentences authorizing denial of entry as construed in Division 1.

3. The statute is also not violative of due process or equal protection guarantees. It comports with fair notice to those to whom the statute is directed, and as we construe the language used here, *actual or imminent* threat of harm or of disruption of on-going operations on state property or in buildings housing state agencies is required. Grayned v. City of Rockford, supra; Cameron v. Johnson, 390 U. S. 611 (88 SC 1335) (1968). We also do not agree that the statute is overbroad as "sweeping within its prohibitions" what may not be punished under the First and Fourteenth Amendments. "[T]he government may adopt reasonable time, place and manner regulations, which do not discriminate among speakers or ideas, in order to further an important governmental interest unrelated to the restriction of communication." Buckley v. Valeo, 424 U. S. 1, 18 (96 SC 612) (1975). See Erznoznik v. City of Jacksonville, 422 U. S. 205, 209 (95 SC 2268) (1975); Cox v. Louisiana, 379 U. S. 536 (85 SC 453) (1965); Adderley v. Florida, supra; Kovacs v. Cooper, 336 U. S. 77 (69 SC 448) (1949).

*Judgment reversed. All the Justices concur, except Hill, J., who concurs in Divisions 1 and 3, and in the judgment.*

ARGUED MARCH 13, 1979 — DECIDED APRIL 4, 1979.

*Hinson McAuliffe, Solicitor, Charles Hadaway, Assistant Solicitor,* for appellant.

*Arthur K. Bolton, Attorney General, Daniel M. Formby, Assistant Attorney General,* amicus curiae.

*Brooks Franklin, Margie Pitts Hames, Al Horn, Reber Boult,* for appellee.