UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard BASSIL, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Derrick BROWN, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Marcus JAY, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Donnell HUNTER, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

William SMITH, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Irvin BOND, a/k/a Erving Bond,
Defendant–Appellant.

Nos. 90–5678 to 90–5682 and 90–5687.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1991.

Decided May 6, 1991.

---

Thomas C. Carter, argued, Alexandria, Va., for appellant Hunter.

David B. Smith, argued, English & Smith, Alexandria, Va., for appellant Bond.

Frank G. Aschmann, argued, Aschmann & Ashmann, Alexandria, Va., for appellant Jay.

Drewry B. Hutcheson, Jr., argued, Alexandria, Va., for appellant Smith.

C. Dean Latsios, argued, Fairfax, Va., for appellant Brown.

Stephen J. Crum, argued, Arlington, Va., for appellant Bassil.

Debra Sue Straus, Asst. U.S. Atty., Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief for appellee.

Before SPROUSE and WILKINSON, Circuit Judges, and MULLEN, U.S. District Judge for the Western District of North Carolina, sitting by designation.

WILKINSON, Circuit Judge:

Appellants, six inmates at the Lorton Reformatory, were convicted and sentenced for various offenses committed during a prison riot. All of the appellants contest their convictions. We affirm these convictions. Two of the appellants, Derrick Brown and William Smith, also challenge their sentences. We affirm Brown's sentence but remand Smith's case for resentencing for the reasons expressed herein.

## I.

On March 28, 1989 around 3:00 a.m., correctional officers at the Lorton Reformatory responded to a disturbance in the B-wing of Dormitory Three. An inmate, Marlon Blake, had apparently been assaulted by other inmates. The officers assembled the inmates from B-wing in the dormitory's day room. Blake identified Donnell Hunter and another inmate as his assailants.

Captain Jones, supervisor of the officers, ordered the two assailants to be removed from the dormitory. Hunter backed away from the officers. At that time, another inmate, William Smith, began shouting that the officers had the wrong men and that the officers were not going to take any inmates out of the dormitory. Captain Jones attempted to calm Smith, but Smith had to be forcibly removed from the area. Jones also approached Hunter in an attempt to persuade him to leave the dormitory peacefully. Hunter responded by punching Jones in the face causing him to lose consciousness.

Meanwhile, other B-wing inmates had begun yelling at the officers and throwing objects. For example, Derrick Brown told the officers to "get the hell out" of the dormitory and stood menacingly over Jones after he had been knocked to the floor unconscious. In addition, Brown, Richard Bassil, and Irvin Bond hurled chairs at the officers. Inmate Marcus Jay apparently shouted obscenities at the officers and announced his refusal to leave the day room. The twelve corrections officers deployed to B-wing were eventually able to regain control of the area but not before six officers were injured in the confrontation with approximately forty inmates.

Hunter, Smith, Brown, Bassil, Bond, and Jay were indicted for their actions during the March 28 melee. A jury convicted these defendants on a variety of charges which depended on the individual defendant's level of participation in the riot. The charges included resisting a correctional officer and assaulting an officer with a dangerous weapon in violation of D.C.Code Ann. §§ 22–505(a) & 505(b), rioting while carrying a dangerous weapon in violation of 18 U.S.C. § 13 (assimilating Va.Code Ann. § 18.2–405), and injuring a person during a riot in violation of 18 U.S.C. § 13 (assimilating Va.Code Ann. § 18.2–414). The defendants were sentenced to additional prison terms ranging from 12 to 100 months.

All six of the defendants now appeal their convictions. Smith and Brown also challenge their sentences. We shall address the claims related to appellants' convictions and then turn to the sentencing issues.

## II.

Appellants Hunter, Smith, and Jay challenge their convictions for violating D.C.Code Ann. § 22–505(a) (1990). Section 22–505(a), in pertinent part, provides that a

person has committed a felony if he "without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates or interferes with ... any officer or employee of any penal or correctional institution ... while engaged in or on account of the performance of his official duties." Appellants contend that such conduct as refusing to obey an order to leave the premises, shouting obscenities at the correctional officers, or merely gesturing in a menacing fashion is not within the ambit of the statute because it is not forcible. They contend further that the district court erred by failing to instruct the jury that force is an essential element of a § 22–505(a) offense.

Appellants acknowledge that force is nowhere mentioned in the statute. They point, however, to 18 U.S.C. § 111 (1988), which deals with resistance to certain federal officers in the performance of their duties, and from which they contend § 22–505(a) is derived. Because § 111 explicitly refers to forcible resistance, appellants reason that force must also be a necessary element of a § 22–505(a) violation. The answer to this contention lies in the plain language of the statutes: the federal statute refers to force and the District of Columbia statute does not. We decline to usurp the legislative function by reading a requirement of forcible resistance into the latter enactment. Respect for the legislative function is particularly appropriate here because the District of Columbia statute has been amended on at least four occasions, thus providing ample opportunities for force to be included as an element of the offense if such was the intent.

Jay, Smith, and Hunter further argue that the cases under section 22–505(a) involve the use of force. While this may be true, it does not convert force into an essential element of the crime. It is quite possible, for example, to impede or interfere with an officer without actually using force. *See Long v. United States,* 199 F.2d 717, 719 (4th Cir.1952).

■ Jay contends that even if force is not an element of a § 22–505(a) offense, his actions do not meet the remaining requirements of the statute. After reviewing the record, we conclude that sufficient evidence exists to establish that Jay impeded and interfered with correctional officers as they attempted to regain control of the dormitory.[1]

### III.

We next turn to the issues of sentencing.

### A.

■ Derrick Brown contends that the district court erred by sentencing him under U.S.S.G. § 2A2.2 because his conduct did not amount to aggravated assault. The application note to § 2A2.2 defines aggravated assault as "a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (i.e., not merely to frighten)." The jury convicted Brown of using a deadly weapon both during a riot and to assault a correctional officer, based in part on the testimony of a number of officers that Brown threw a chair in their direction. The district court could reasonably conclude that defendant's intent in throwing the chair was to cause harm to the officers rather than merely frighten them.

■ In the alternative, Brown contends that the court erroneously increased his offense level under § 2A2.2(b)(3)(A) because his assault did not cause bodily inju-

---

1. All of the appellants allege that the district court abused its discretion by not conducting a full-scale hearing into their allegations that during the trial prison officials were coaching government witnesses on the identification of riot participants. We disagree. The court took appropriate steps which, while short of a full evidentiary hearing, ensured that prison officials were not coaching witnesses. Moreover, because appellants' allegations lacked "sufficient solidity," the district court properly exercised its discretion in refusing their request for a disruptive and time consuming mini-trial. *United States v. Stevenson,* 554 F.2d 123, 126 (4th Cir. 1977). Appellants Bond and Bassil also raise individual challenges to their convictions. We hold that the court correctly ruled on the admissibility of evidence alleged by Bond to be hearsay and that sufficient evidence supports Bassil's conviction.

ry. While it may be uncertain whether the chair thrown by Brown caused a specific injury, it is undisputed that Brown participated in and aided a riot in which assaults occurred that caused bodily injuries. Because he is accountable for this harm under the Guidelines, see U.S.S.G. § 1B1.3, the increase in Brown's offense level was warranted.

### B.

■ William Smith claims that the court erred in sentencing him as a career offender under U.S.S.G. § 4B1.1. To be classified as a career offender, Smith must have sustained at least two felony convictions (for either a crime of violence or a controlled substance offense) prior to committing the instant crime of violence during the riot. See U.S.S.G. § 4B1.2(3). Prior to the riot, Smith had been convicted of and sentenced for one crime of violence and had pled guilty to a controlled substance offense. At the time of the riot, however, he was awaiting sentencing for the drug offense. Smith argues that a conviction does not count toward career offender status until sentencing takes place. For its part, the government argues that a guilty plea qualifies as a conviction for purposes of § 4B1.1.

■ The government cites a number of cases to support its position, but these cases do not address the specific Guidelines scheme before us. To resolve this dispute, we must look to the language of the Guidelines. Section 4B1.2(3) provides that "the date that a defendant sustained a conviction shall be the date the judgment of conviction was entered." According to Fed.R.Crim.P. 32(b)(1), the judgment of conviction includes the plea, the verdict or findings, the adjudication, and the sentence. The position that a conviction becomes relevant for career offender purposes when sentence is imposed finds further support in *Questions Most Frequently Asked About The Sentencing Guidelines*

(1990). Response number sixty-six states that under § 4B1.2 the date the defendant sustained a conviction means "the date the *sentence* was *imposed,* not the date the plea was accepted or the guilty verdict entered." Because Smith was sentenced for his second felony only after committing the offense during the riot, he should not have been sentenced under the career offender provision. We, therefore, vacate Smith's sentence and remand for resentencing.

This does not mean, however, that Smith's controlled substance offense (the second felony) and his sentence for that offense are irrelevant on resentencing. See U.S.S.G. § 4A1.1 and § 4A1.2, comment. (n. 1). Indeed, the criminal history categories of the Guidelines may not adequately account for the seriousness of Smith's conduct and, therefore, a departure may be warranted under U.S.S.G. § 4A1.3. Section 4A1.3(d) specifically notes that a departure may be warranted where a defendant was pending sentencing at the time he committed the instant offense. In addition, Smith's own conduct seemingly contributed to a delay in the prosecution of his controlled substance offense. He was charged with that offense in November of 1987 and placed on pre-trial work release. He then apparently escaped from custody and was apprehended nine months later when he was arrested on another charge.[2] On December 22, 1988 he pled guilty to the 1987 drug offense. He was awaiting sentencing on the drug charge when the melee at Lorton occurred. We do not believe that the Guidelines were intended to reward defendants who are able to delay their prosecutions, and in turn their classification as career offenders, by escaping from custody. Moreover, Smith, who had been convicted of a crime of violence and became involved in a prison riot while he was awaiting sentencing on another offense, seems a classic example of a career criminal. "A career criminal is incorrigible, undeterrable, [and] recidivating...." *United*

---

2. Smith's counsel, at sentencing for the Lorton offense, appeared to dispute that his client contributed to a delay in the prosecution of the drug offense. The trial court apparently reject-ed counsel's arguments. We are satisfied that any further disputes on this point can be resolved during resentencing.

*States v. Belton*, 890 F.2d 9, 10 (7th Cir. 1989).

For these reasons, on remand it is appropriate for the district court to consider the controlled substance offense when deciding whether the Guidelines' criminal history categories adequately reflect the seriousness of Smith's past criminal conduct. It is further appropriate for the district court to consider departing from the Guidelines in order to sentence a defendant, whose conduct delayed his convictions, as if the career offender provision applied. *United States v. Jones*, 908 F.2d 365, 368 (8th Cir.1990) ("If the district court had not departed upward, Jones would in effect have been rewarded for his failure to appear for sentencing.").

### IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED IN PART, VACATED IN PART AND REMANDED.