**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George HOFF, Defendant–Appellant.**

**No. 93–10279.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 8, 1993 *.

Memorandum filed Feb. 2, 1994.

Decided April 19, 1994.

Matthew C. Bockman, Asst. Federal Public Defender, Sacramento, CA, for defendant-appellant.

Lisa C. Ridge, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Before: CHOY, GOODWIN and SKOPIL, Circuit Judges.

Per Curiam.

### ORDER

The Memorandum disposition filed on February 2, 1994, is redesignated a published Opinion.

PER CURIAM:

On October 14, 1992, Appellant George Hoff ("Hoff") was convicted and fined $100 for being in a restricted wilderness area without a permit and $200 for intimidating an U.S. Forest Service officer under Title 36, Code of Federal Regulations ("C.F.R."), Section 261.3(a). The district court affirmed the magistrate judge's ruling. Hoff appeals the conviction and fine for intimidating a forest ranger.

On July 25, 1992, Ranger Mary Thompson encountered Hoff and two male companions

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34–4.

fishing beside Lucille Lake, a restricted area five miles within the Desolation Wilderness in eastern California. When spotted, Hoff strode toward Ranger Thompson who, alone on patrol and equipped only with a shovel, checked Hoff's identification and issued him a citation for being in the wilderness without a permit. Hoff became agitated and responded by shouting that he was going to "take it to Sacramento and fight the [ticket]." After telling the three men to leave by the following morning, Ranger Thompson walked around the lake to be near other campers who had shown concern for her safety and hiked away through the cover of the back country.

Returning the next day for clean-up duties with her husband, also a Forest Service employee, Ranger Thompson saw that the three men, as well as a dog, were still at their illegal campsite. Standing approximately one hundred feet from the rangers, Hoff said "go get 'em" three times to his companion's growling dog, which stood about eighty feet from the rangers but made no move. According to Ranger Thompson's husband, the dog "seemed to be tied up." While the record does not clearly indicate whether his wife made the same observation, Ranger Thompson testified that she had already begun feeling "intimidated by that point, but the scene with the dog really broke the camel's back. That was enough for me." Without attempting further to approach Hoff or issue another citation, Ranger Thompson and her husband immediately departed.

■ We review a trial court's interpretation of a regulation de novo as a question of law. *United States v. Semenza*, 835 F.2d 223, 224 (9th Cir.1987). The lower court found that Hoff intimidated Ranger Thompson under Section 261.3(a), but did not threaten or assault her. Hoff's first contention of error, that the magistrate judge erred by "focusing exclusively on 'intimidating' instead of 'threatening' or 'interfering'," founders on a patent misreading of Section 261.3(a). This regulation prohibits "[t]hreatening, resisting, intimidating *or* interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of

the National Forest System." 36 C.F.R. § 261.3(a) (emphasis added). Because these offenses are plainly stated in the disjunctive, the lower courts' focus on whether Hoff intimidated Ranger Thompson was entirely proper. *See Rose v. United States Postal Service*, 774 F.2d 1355, 1360–61 n. 14 (9th Cir.1984) (finding disjunctive statute containing list of offenses whose last two items are separated by an "or").

■ Hoff next asserts that the district court confounded the constitutional standards governing an officer's exposure to "intimidation" versus less privileged "threats". We disagree. Applying regulatory language never before interpreted judicially, the district court reasonably accepted the Government's uncontested contention that, by analogy to cases involving threats to the President and other federal officials under 18 U.S.C. §§ 871 and 115 respectively, a reasonable person standard also applied to hostile conduct toward a forest ranger under 36 C.F.R. § 261.3(a). *See, e.g., United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990) (finding that the First Amendment does not protect a statement that could reasonably be interpreted as expressing intent to harm or assault a federal law enforcement official). In the absence of prior judicial interpretation, the district court then properly directed its inquiry to whether Hoff made Ranger Thompson timid or fearful and thus "intimidated" her as the term is commonly understood. *See* Webster's Third New International Dictionary 1184 (1986).

Nonetheless, Hoff contends that "First Amendment safeguards are more restrictive in intimidation cases than assault cases because intimidation prosecutions pose a greater threat to protected speech than assault prosecutions." We need not address the validity of this untested and unsubstantiated contention because we agree with the district court that Hoff's statements failed to meet any conceivable definition of protected speech, regardless of any disparity in the relevant standards for the various disjunctive elements of a Section 261.3(a) offense.

The only authority Hoff cites for this novel assertion, *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372 (9th Cir.1990), is inapt. Af-

firming Duran's recovery for unlawful arrest under 42 U.S.C.A. § 1983, we found the First Amendment to protect a car passenger's obscenities and hand gestures, however "inarticulate and crude", as expressions of disapproval with an officer who had just removed him from a bar. *Id.* at 1378.

While this holding might protect Hoff's similarly boorish response to being issued a citation during his first encounter with Ranger Thompson, his potentially dangerous attempt to incite a dog to attack or repel the rangers on the second day, although verbal, was not spoken "criticism" in even the basest sense of the word. Apart from its nobler attributes, a dog also has the potential to be a dangerous instrumentality. *Schleier v. Alter,* 159 Ariz. 397, 400, 767 P.2d 1187, 1190 (1989) (finding that "Misty's history revealed her as the equivalent of a 'dangerous instrumentality' to children"). Where the speaker is likely to succeed in fomenting an attack by or on a third party, regardless of actual success, his minatory words fall outside the First Amendment. *See Chaplinksy v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (fighting words); *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (incitement to riot). More akin to the cocking of a trigger than to privileged speech, Hoff's inducement of a dog to attack, no less than the incitement of a mob to riot or an invitation to fight, thus fails to reach the constitutional threshold.

In addition to the obviously different intentions manifested by the speakers through their utterances in *Duran* and the instant case, the objectively reasonably perceptions of the officers at whom the speech was directed would be vastly different. The obscene gestures and foul language we found not to constitute a "true threat" in *Duran* were mere complaints aimed by a hitherto compliant man, escorted by his wife, at a trained, armed police officer sitting in the relative safety of a patrol car and maintaining open-line communications with headquarters. In marked contrast, Ranger Thompson, even when accompanied by her husband on the second day, was unarmed, outnumbered, exposed, isolated and confronted by a previously and increasingly uncooperative individual and his likewise snarling, unpredictable canine companion. Whereas Duran's presence in his automobile was itself an act of compliance following his removal from a bar, Hoff's continued presence at the campsite was an act of defiance to his citation the previous day setting the intimidating tenor for his second encounter with Ranger Thompson. *See Roy v. United States,* 416 F.2d 874, 876 (9th Cir.1969) (ascertaining existence of a threat to a federal officer from the totality of the circumstances).

Hoff's final contention of error is that the district court founded his conviction under Section 261.3(a) on insufficient evidence. When reviewing the sufficiency of evidence to support conviction, we view the record in the light most favorable to the Government to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Chen,* 754 F.2d 817, 821 (9th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985). Viewing the record in this light, we agree that Ranger Thompson could reasonably have concluded in light of Hoff's intransigence during the first encounter that his commands to the dog evidenced an escalation of tensions and an intention to resist the delivery of another citation or his ejection from the Desolation Wilderness.

Even assuming *arguendo* that federal officers are required constitutionally to give wider berth to "intimidating" conduct than to more menacing "threats", the district court did not clearly err in finding that Hoff's utterances on the second day constituted fighting words going far beyond Duran's "boorish" or "crass" criticism and well exceeding the boundaries of the First Amendment. Given the immediate intention to harm conveyed by Hoff's words and the intimidating atmosphere in which they uttered, we affirm Hoff's conviction under 36 C.F.R. § 261.3(a).

AFFIRMED.