**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Duane A. WILLFONG, Defendant–
Appellant.**

**No. 00–10227.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 2001

Filed Dec. 21, 2001

Kenneth M. Bareilles, Eureka, California, and Duane Willfong, Pro per, for the defendant-appellant.

Miquel Rodriguez, Assistant U.S. Attorney, Sacramento, California, for the plaintiff-appellee.

Before: NOONAN, SILVERMAN, Circuit Judges, and SEDWICK,* District Judge.

Opinion by Judge SILVERMAN; Dissent by Judge NOONAN

SILVERMAN, Circuit Judge:

Does a logger's refusal to desist logging operations on Forest Service land, after a

* The Honorable John W. Sedwick, United States District Judge for the District of Alas-

Forest Service Law Enforcement Officer ordered him to do so at the behest of the Forest Service representative authorized to shutdown the logging operation, constitute "interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest System" under 36 C.F.R. § 261.3(a)? We hold that it does, and we affirm.

## I. BACKGROUND

The evidence at trial established the following facts: Eel River Saw Mills entered into two contracts with the U.S. Forest Service for the purchase of timber in the Six Rivers National Forest. The events material to this case concern the sale of timber from the Crabtree parcel. Eel River Saw Mills hired appellant Willfong, an independent logging contractor, to perform the logging operations at the Crabtree site. The Forest Service designated Leonora Crippa as its sale administrator for the project to monitor the performance of the contract. The Forest Service delegated to Crippa the contractual authority to, among other things, issue an oral order to temporarily shutdown logging operations to prevent human or environmental injury.

Believing Willfong and his crew to be in breach of the logging contract at the site of the other sale (Tub Springs), and concerned about the skidding practices and the resulting damage to the area at Crabtree, Crippa notified Eel River Saw Mills on July 2, 1998, that skidding at the Crabtree sale was shutdown. The next day, Crippa went to Crabtree and observed that the logging operations were still going on. Crippa told Willfong that the skidding at Crabtree was supposed to have stopped and had to stop. Willfong refused to stop the skidding.

Uncomfortable with the increasingly tense situation, Crippa left the area, decided that all operations at Crabtree must be suspended, and contacted U.S. Forest Service Law Enforcement Officer John Allendorf. Crippa told Allendorf that she had issued a suspension order on a timber sale and that the order was being disobeyed. Crippa requested Allendorf's assistance in gaining compliance with the shutdown order. Allendorf knew that Crippa had the authority to issue a shutdown order.

Officer Allendorf followed Crippa to Crabtree, then went down to the sale area alone. He encountered Willfong and heard the sound of logging equipment. Allendorf told Willfong that an oral shutdown had been issued and that he would have to suspend operations until the matter of the suspension was resolved. Allendorf continued to try to secure Willfong's voluntary cooperation in ceasing operations, but Willfong stated that he would not shut down. Allendorf warned Willfong that he could be arrested, but Willfong still refused to shut down his operation. Allendorf offered to cite-and-release him if he would cooperate in shutting down. Willfong refused. Allendorf then placed Willfong under arrest. After being arrested, Willfong encouraged his crew to keep on with their logging operation, saying words to the effect of "I don't want you guys to shut down. Just keep working."

Willfong was charged with two violations: Threatening, resisting, intimidating, or interfering with a forest officer, in violation of 36 C.F.R. § 261.3(a); and unauthorized timber cutting, in violation of 36

ka, sitting by designation.

C.F.R. § 261.6(a). At trial before U.S. Magistrate Judge Craig M. Kellison, Willfong was acquitted of unauthorized timber cutting, but found guilty of interfering with a Forest Service officer. He was placed on probation and fined $250.00. Willfong appealed his conviction to U.S. District Judge William B. Shubb, who affirmed Judge Kellison's decision.

## II. JURISDICTION

■ We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294. We review a trial court's interpretation of a regulation de novo. *United States v. Hoff,* 22 F.3d 222, 223 (9th Cir.1994). Because Willfong appeals his conviction, this court views the record in the light most favorable to the Government to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Arbo,* 691 F.2d 862, 866 (9th Cir.1982).

## III. ANALYSIS

### A. Allendorf's Order Took Place in the Performance of His Official Duties

36 C.F.R. § 261.3(a) provides:

> Threatening, resisting, intimidating, or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest System is prohibited.

Willfong contends that he did not violate section 261.3(a) because, he says, the forest officer's order was unlawful. We disagree.

■ On appeal, after a finder of fact has convicted the defendant, we must view the evidence in the light most favorable to the prosecution. *E.g., United States v. Crawford,* 239 F.3d 1086, 1092 (9th Cir. 2001). The evidence supports a finding that Allendorf was performing his duties in the administration of the National Forest at the time Willfong allegedly interfered with him. For purposes of 36 C.F.R. § 261.3(a), a forest officer is performing an "official duty" when the officer is on duty and performing an act that contributes to the protection, improvement, or administration of the National Forest. *United States v. Ryberg,* 43 F.3d 1332, 1334 (9th Cir.1995); 36 C.F.R. § 261.3(a). Clearly, Allendorf was on duty, performing his duties, and acting in his official capacity at all material times. He was not off on a "frolic of his own." *Ryberg,* 43 F.3d at 1334. Allendorf carried out the directions of an official seeking to enforce the provisions of the Forest Service's logging contract. Since the Forest Service designated Crippa as the administrator of the contract, and Crippa sought Allendorf's help in enforcing the shutdown order, Willfong "cannot successfully argue that this kind of administrative deployment of Forest Service officers was not germane to the protective mission of the Forest Service." *Id.*

Willfong also argues that he could not have interfered with Allendorf because, he contends, Allendorf was attempting to enforce an invalid shutdown order. This argument fails for two reasons. In the first place, the evidence presented at trial indisputably established that Crippa had the authority to suspend the logging operations under the terms of the contract and the authority delegated to her by the Forest Service. Secondly, even if Crippa lacked such authority, Willfong nevertheless had no right to interfere with Allendorf. So long as Allendorf was performing his official duties in the administration of

the Forest System, 36 C.F.R. § 261.3(a) prohibits anyone from interfering with those duties. By way of analogy, a person does not have the right to resist arrest even if the charges are false or the arrest unlawful. *United States v. Cunningham,* 509 F.2d 961 (D.C.Cir.1975). It is undisputed that Allendorf relied in good faith on the validity of Crippa's shutdown order when he sought to enforce it. It was Crippa's job, not Allendorf's, to determine whether a temporary shut down order should be issued under the provisions of the administration contract. If Willfong disagreed with Crippa's order, he had the right to try to get it rectified. He did not have the right to interfere with the officer's enforcement of it.

## B. Willfong's Refusal to Shut Down Crabtree Constitutes "Interference" under 36 C.F.R. § 261.3(a)

Willfong contends that the failure to obey a forest officer's order does not constitute "interference" with the officer as a matter of law. We disagree.

Courts have not expressly addressed what constitutes "interference" under 36 C.F.R. § 261.3(a). Without prior interpretation, this court should apply the common meaning of a word. *See Hoff,* 22 F.3d at 223. To "interfere" is to "oppose, intervene, hinder, or prevent." WEBSTER'S NEW WORLD DICTIONARY 704 (3d College ed.1998). " '[I]nterfere' has such a clear, specific and well-known meaning as not to require more than" the use of the word itself in a criminal statute. *United States v. Gwyther,* 431 F.2d 1142, 1144 n. 2 (9th Cir.1970). The plain meaning of "interfere" also comports with the purpose of the regulation, which is to regulate "the use of the National Forests and to preserve them from destruction." *Ryberg,* 43 F.3d at 1334; *see also* 16 U.S.C. § 551.

The lower courts' determination that Willfong's actions constituted interference is consistent with the plain meaning of the word. In failing to shut down the logging operation when ordered to do so by Allendorf, Willfong clearly hindered Allendorf's ability to perform his official duty. At the time of Allendorf's shut down order, Willfong and his crew actively were logging trees. Allendorf's ability to execute the shut down order depended upon Willfong and his crew taking affirmative steps to cease operations. Willfong interfered with Allendorf in refusing to stop what he and his crew were doing. Willfong did not merely do nothing. He refused to stop doing something—in this case, to stop his logging in the face of an officer's official attempt to stop it.

This situation is similar to what occurred in *United States v. Arbo,* 691 F.2d 862 (9th Cir.1982). In *Arbo,* the defendant refused to allow a Forest Ranger and a Mineral Assistant to make a compliance inspection of his mining operation in the Shasta–Trinity National Forest and had them escorted away from the site. We held that there was sufficient evidence to support a conviction for interference with a forest officer.

Willfong contends that his refusal to abide by Allendorf's order did not constitute "interference" because he did not use any physical force. Willfong relies primarily on *District of Columbia v. Little,* 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950), in which the Supreme Court held that a woman who refused to unlock her door and permit a health inspection of her home, without a warrant, was not interfering under a statute that made it illegal to interfere with health inspections. The essence of *Little* is this:

Although force or threatened force is not always an indispensable ingredient

of the offense of interfering with an officer in the discharge of his duties, mere remonstrances or even criticisms of an officer are not usually held to be the equivalent of unlawful interference. * * * The word "interfere" in this regulation cannot fairly be· interpreted to encompass respondent's failure to unlock her door and her remonstrances on constitutional grounds. * * * The right to privacy in the home holds too high a price in our system of laws to justify a statutory interpretation that would impose a criminal punishment on one who does nothing more than [object to the officer's entry of her house without a search warrant].

*Id.* at 6–7, 70 S.Ct. 468.

Little does little for Willfong. *Little* makes it clear that force or threatened force is not an essential ingredient of interference. 339 U.S. at 6, 70 S.Ct. 468. Additionally, unlike Mrs. Little, Willfong was not asserting a significant constitutional right or merely remonstrating or voicing criticism. Instead, he affirmatively refused to discontinue logging *on Forest Service land* when ordered to do so by a forest officer acting under color of a shut down order. It is self-evident that Willfong's refusal to shut down Crabtree when ordered to do so interfered with Allendorf's attempt to shut it down.

Willfong's assertion that force is an element of "interference" under 36 C.F.R. § 261.3(a) is baseless. Neither the enabling statute, 16 U.S.C. § 551, nor the regulation itself makes any mention of force or threatened force as a requirement for a violation of 36 C.F.R. § 261.3(a). In fact, the regulations make clear that force is not a required element of interference. The regulation under which Willfong was convicted, 36 C.F.R. § 261.3(a), falls under

Title 36, Chapter II, Part 261, Subpart A, which lists the general prohibitions in the National Forest System. Within that Subpart, one provision—36 C.F.R. § 261.1—defines the scope of all of the prohibitions in that Subpart, including those in 36 C.F.R. § 261.3(a). Section 261.1 clearly indicates that the prohibitions covered in the regulations are broad. It states that the prohibitions apply, except as otherwise provided, when "[a]n act *or omission* occurs in the National Forest System or on a National Forest System road or trail." 36 C.F.R. § 261.1(a)(1) (emphasis added). When § 261.3(a) is read in light of § 261.1(a)(1), the definition of "interference" under the regulations applies to any act or omission that interferes with an officer's official duties. Willfong acted to interfere with the officer's shut down order by refusing to stop the logging. Whether Willfong's refusal to obey the shut down order is classified as an act or omission, however, it was prohibited by the regulations.

In *United States v. Bassil,* 932 F.2d 342 (4th Cir.1991), the court held that force was not an element of interference where the statute stated that one committed a felony if he "assaults, resists, opposes, impedes, intimidates or interferes with . . . any officer or employee of any penal or correctional institution." 932 F.2d at 345. The court stated: "We decline to usurp the legislative function by reading a requirement of forcible resistance [into the statute]." *Id.* The court continued by stating that "[i]t is quite possible . . . to impede or interfere with an officer without actually using force." *Id.*

Other interference cases decided after *Little* also make clear that force is not a required element of interference. In *United States v. Bass,* 82 F.3d 811 (8th

Cir.1996), for example, the court held that a driver's refusal to obey a National Park Service Ranger's order to "stand still" at the rear of the vehicle—by walking away three times and kicking the door to his vehicle shut—constituted interference with the Ranger's duties. 82 F.3d at 811–12. *See also State v. Boone,* 243 Ga. 416, 254 S.E.2d 367 (1979), *cert. denied,* 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 133 (1979) (refusal to obey order to vacate building constitutes interference); *Ratliff v. State,* 133 Ga.App. 256, 211 S.E.2d 192 (1974) (refusal to obey order to stop attempting to enter a premises being searched constitutes interference); *City of Chicago v. Lynd,* 47 Ill.2d 205, 265 N.E.2d 116 (1970), *cert. denied,* 402 U.S. 923, 91 S.Ct. 1383, 28 L.Ed.2d 662 (1971) (refusal to obey order to clear the street constitutes interference); *State v. Manning,* 146 N.J.Super. 589, 370 A.2d 499 (App.Div.1977) (refusal to obey order to re-enter vehicle constitutes interference); *Township of East Brunswick v. Malfitano,* 108 N.J.Super. 244, 260 A.2d 862 (App.Div.1970) (refusal to obey order to provide one's name and address constitutes interference).

It has been argued that the doctrine of ejusdem generis should apply to construe 36 C.F.R. § 261.3(a). Under ejusdem generis, where general words follow specific words in statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *See Leslie Salt Co. v. United States,* 896 F.2d 354, 359 n. 8 (9th Cir. 1990), *cert. denied,* 498 U.S. 1126, 111 S.Ct. 1089, 112 L.Ed.2d 1194 (1991); *see also* 2A SUTHERLAND STATUTORY CONSTRUCTION § 47.17 at 273–74 (6th ed.2000). The argument goes as follows: "Interference" is a general term at the end of the specific series, and the prior specific terms in this series are "threatening," "resisting," and "intimidating"; therefore, interference is limited to forcible actions similar in nature to threatening, resisting or intimidating.

Ejusdem generis does not apply in this case. The Ninth Circuit in *United States v. Hoff,* 22 F.3d 222 (9th Cir.1993) examined the relationship of the terms "threatening," "resisting," "intimidating," and "interfering" in section 261.3(a), and held that each offense is independent from the others. In *Hoff,* the defendant was convicted under 36 C.F.R. § 261.3(a) of intimidating a forest officer by yelling at her when she issued a ticket and later ordering a dog to "go get 'em." 22 F.3d at 223. The defendant argued on appeal that the magistrate judge erred by focusing exclusively on "intimidating" rather than on "threatening" or "interfering." *Id.* We stated that proof of any one of the acts in section 261.3(a) could support a conviction because the regulation is "plainly stated in the disjunctive" and prohibits "[t]hreatening, resisting, intimidating, *or* interfering" with a forest officer. *Id.* To read the regulation otherwise, the court stated, would be a "patent misreading of Section 261.3(a)." *Id.* This court indicated recently that *Hoff* came to the obvious and correct result. *See United States v. Taylor,* 258 F.3d 1065, 1068 (9th Cir.2001) (saying that "[n]ot surprisingly," the *Hoff* court concluded that proof on any one of the acts in § 261.3(a) supported a conviction.)

*Hoff* is consistent with the canons of statutory construction. "The rule of ejusdem generis, while firmly established, is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty." *Gooch v. United States,* 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522 (1936); *Federal Trade Comm'n v.*

*MTK Mktg., Inc.*, 149 F.3d 1036, 1040 (9th Cir.1998), *cert. denied*, 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Leslie Salt Co.*, 896 F.2d at 359. The meaning of the term "interference" is clear and there is no uncertainty. In addition, ejusdem generis cannot "be use to defeat the obvious purpose of legislation." *Gooch*, 297 U.S. at 128, 56 S.Ct. 395; *see also United States v. Alpers*, 338 U.S. 680, 683, 70 S.Ct. 352, 94 L.Ed. 457 (1950) (refusing to apply ejusdem generis on the grounds that it would defeat the purpose of the legislation). To apply ejusdem generis here would defeat the broad purpose of the regulation, which is to regulate the use of the national forests and to preserve them from destruction. *Ryberg*, 43 F.3d at 1334. Finally, "while penal statutes are narrowly construed, this does not require rejection of that sense of the words which best harmonizes with the context and the end in view." *Gooch*, 297 U.S. at 128, 56 S.Ct. 395.

The regulation, 36 C.F.R. § 261.3(a), does not refer to force and we decline to read the rule to require that physical force be used to interfere with an officer's duties. By actively refusing to stop logging, Willfong interfered with the forest officer's ability to enforce a shut down order at Crabtree. Viewed in the light most favorable to the prosecution, a reasonable trier of fact could find that Willfong interfered with Allendorf's official duties. *See Arbo*, 691 F.2d at 866.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.

NOONAN, Circuit Judge, dissenting:

At one level the issue on appeal is the meaning of a word; on a deeper level it is the right of a person not to be prosecuted for, and convicted of, a crime that he did not commit.

As to the meaning of the word, the court cites a popular college dictionary and follows it up with a thirty-year-old case telling us that the word needs no definition. The meaning deserves more attention than that.

The following summarizes the definitions to be found in *Webster's Third New International Dictionary* (1981):

After giving the etymology (from Latin *inter* and *ferire* to strike), the dictionary gives as the first definition "to strike one foot against the opposite foot in walking or running—used esp. of horses." Definition 2 is "to come in collision; to be in opposition; to run at cross purposes: Clash". Definition 3 is "to take a part in the concerns of others: Intermeddle, Interpose, Intervene." Definition 4 is obsolete. Definition 5 is "to act reciprocally so as to augment, diminish, or otherwise affect one another—used of waves." Definition 6 is "to claim substantially the same invention." Definition 7 is "of a football player: (a) to run ahead of the ballcarrier ... (b) to hinder illegally an attempt of a player to receive a pass or make a fair catch."

The etymology of "interfere"—its derivation from "strike"—and every one of its several meanings, as well as the examples of usage furnished by the dictionary, show that "to interfere" is to take an action of some kind.

In what sense was Willfong charged with interfering? We can be certain that he was not charged with pass interference or with imitating a horse or a wave or asserting a right to an invention. That leaves two meanings of "interfere" conceivably applicable to him. It would be diffi-

cult to describe him as "taking a part" in Allendorf's concerns or intermeddling in them when he was ignoring them. Most likely, then, "interfere" in his indictment meant to "come into collision, to be in opposition, to run at cross-purposes." The problem is that these equivalents point to action by the one doing the interference. "To clash," which the capital in definition 2 signifies to be a synonym, is equally an active verb referring to action on the part of the one clashing.

In the period immediately preceding his arrest, Willfong was, in the words of the arresting officer, "compliant throughout . . . a perfect gentleman." How can one be interfering or clashing with an officer when one is behaving like a perfect gentleman? In fact the testimony of the officer is that Willfong responded to the officer's order by saying nothing; he just didn't obey. To quote Allendorf: "And I don't believe he actually gave me a verbal answer. He may have nodded his head one way or the other, but I don't recall which." The court's opinion—quite misleadingly—attempts to give color to its conclusion by quoting Willfong's shout to the men. He was not charged with saying these words. They occurred after his arrest.

In the court's extraordinarily strained interpretation, "to interfere" is equated with "to fail to obey an officer." That meaning is not only contrary to the plain meaning of "interfere," it is at war with the regulations read as a whole.

Title 36 of the Code of Federal Regulations, on "Parks, Forests, and Public Property," has fifteen chapters. Seven of them relate to federal services using law enforcement officers or other officials who supervise the public: the National Park Service, the Forest Service, the Army Corps of Engineers, the Smithsonian Insti-

tution, the Library of Congress, the Presidio Trust, and the Oklahoma City National Memorial Trust. The Library of Congress and the Smithsonian Institution do not have prohibitions on interfering with their officers but require obedience to authorized personnel. And, with the exception of the Forest Service, each of the five services that have provisions prohibiting interfering with their officers also have provisions that explicitly require obedience to their officers:

*Forest Service:* 36 C.F.R. § 261.3(a), prohibits: " . . . interfering with any forest officer engaged in . . . the performance of his official duties in the protection, improvement, or administration of the National Forest System . . ." (passed in 1977, amended in 1981 and 1984). The chapter covering the Forest Service contains no provision prohibiting disobedience of a forest officer.

*National Park Service:* 36 C.F.R. § 2.32, is titled "Interfering with agency functions." Subpart (a)(1) prohibits " . . . intimidating, or intentionally interfering with . . . a government employee . . . engaged in an official duty" (passed in 1983, amended in 1987). However, 36 C.F.R. § 2.32(a)(2) additionally explicitly prohibits "[v]iolating the lawful order of a government employee . . . authorized to maintain order . . . during . . . law enforcement actions . . ."

*Army Corps of Engineers:* 36 C.F.R. § 327.24(a), titled "Interference with Government employees," makes it a crime to " . . . interfere with . . . any . . . employee for the U.S. Army Corps of Engineers engaged in the performance of his or her official duties . . ." Subpart (b) goes on to clarify that: "Failure to comply with a lawful order issued by a Federal employee acting pursuant to the regulations in this

part shall be considered as interference with that employee while engaged in the performance of their official duties." (passed in 2000). Later, this chapter makes a similar point (about a different set of regulations). Section 331.16 states: "Interference with any Government employee in the conduct of his or her official duties pertaining to the administration of these regulations is prohibited. It is a violation to fail to comply with a lawful order directed by any government employee ..." (passed in 1983).

*Presidio Trust:* 36 C.F.R. § 1002.32, titled "Interfering with agency functions," mirrors exactly § 2.32, governing lands under the National Park Service, prohibiting interference, and also, separately, prohibiting violating a lawful order of an official (passed in 1998).

*Oklahoma City National Memorial Trust:* 36 C.F.R. § 1501.1 adopts § 2.32 from Chapter I, regulating the National Park Service, incorporating both the "interference" provision and the explicit provision prohibiting violating the lawful order of an official (passed in 2000).

*Smithsonian Institution:* 36 C.F.R. § 504.4 requires visitors at the Smithsonian Institution to "comply with ... the directions of authorized individuals." Section 520.5 requires the same, on the grounds of the Smithsonian's Zoological Park (passed in 1968). There is no prohibition on "interference" with an officer.

*Library of Congress:* 36 C.F.R. § 702.3(a)(2) requires "comply[ing] with any lawful order of the police or of other authorized individuals ..." (passed in 1987). There is no prohibition on "interference" with an officer.

In the face of this careful drafting that repeatedly distinguishes failure to obey from interfering, the court goes far beyond its function in creating a regulation that equates "failure to obey" and "interfere."

Duane A. Willfong is an innocent man. He has been arrested, prosecuted and convicted for literally doing nothing. To affirm his conviction the court is compelled to construct a definition contrary to the dictionary and contrary to the federal regulations that define the offense. The precedent created is unfortunate. The injustice done is palpable.