**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-30214 |
| Plaintiff-Appellee, | D.C. No. 4:18-cr-00045-BMM-1 |
| v. | |
| JOAN M. HAVENS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted October 23, 2019
Portland, Oregon

Before: FARRIS, BEA, and CHRISTEN, Circuit Judges.

Joan Marie Havens was convicted after a bench trial of Interfering with a

Forest Officer in violation of 36 C.F.R. § 261.3(a). We have jurisdiction pursuant

to 28 U.S.C. § 1291 and we review the sufficiency of the evidence "in the light

most favorable to the Government to determine whether a rational trier of fact

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

could have found the elements of the crime beyond a reasonable doubt." *United States v. Hoff*, 22 F.3d 222, 224 (9th Cir. 1994) (per curiam).  We affirm.[1]

Section 261.3(a) prohibits "[t]hreatening, resisting, intimidating, or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest System."  36 C.F.R. § 261.3(a).  "Because these offenses are plainly stated in the disjunctive," *Hoff*, 22 F.3d at 223, "proof of any one of the acts in section 261.3(a) could support a conviction," *United States v. Willfong*, 274 F.3d 1297, 1303 (9th Cir. 2001).

Ms. Havens does not dispute that the individuals she confronted on January 11, 2018 were Forest Service officers or that those officers were "on duty and performing an act that contributes to the protection, improvement, or administration of the National Forest." *Willfong*, 274 F.3d at 1300.  Ms. Havens argues only that her "hyperbolic statements were explicitly conditioned on the Forest Service officers trespassing on her land," and as such, were not "true threats."

---

[1]  Because the parties are familiar with the facts, we recite only those facts necessary to resolve this appeal.

To constitute a true threat, a statement must meet "an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault," and "the speaker must subjectively intend to threaten." *United States v. Keyser*, 704 F.3d 631, 638 (9th Cir. 2012) (internal citations omitted). "Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002) (en banc) (quoting *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990)). The conditional nature of a threat "may be a factor in determining whether it constitutes a true threat," but "is not dispositive." *United States v. Sutcliffe*, 505 F.3d 944, 961 (9th Cir. 2007).

A rational trier of fact could have found beyond a reasonable doubt that Ms. Havens' statements that "I have an AR-15 and I know how to use it," "if any of you f---ers burn any of the piles on my property, I have an AR-15 and I know how to use it," and "if any of you f---ers set foot on my property, I'm going to shoot and I will shoot you," were serious expressions of intent to harm and that a reasonable person would interpret the statements as such. In fact, four Forest Service

employees testified that they did interpret the statements that way. All four felt intimidated by Ms. Havens' statements and in fear for their safety.

Ms. Havens' behavior and the context in which she made her statements further confirm their threatening nature. Witnesses testified that Ms. Havens sped toward the officers in her truck, slammed on the brakes, and got out of her vehicle to confront the officers. They also testified that she approached the officers unprovoked and got "right in their face[s]," Ms. Havens was "visibly upset," "very agitated," and "very angry, yelling, screaming" as she made her threats.

A rational trier of fact could have found beyond a reasonable doubt that Ms. Havens subjectively intended to threaten the Forest Service officers. Ms. Havens testified that she intended to make clear to the officers that she would shoot them if they came on her property, and only learned how to hold a gun because of her ongoing conflict with the Forest Service. Ms. Havens also admonished Officer Taylor, "[t]hat's the last warning I'm going to give you bastards."

At a minimum, Ms. Haven's words and conduct were intimidating and interfered with Forest Service operations. *See Hoff*, 22 F.3d at 223–24 (affirming conviction under § 261.3(a) where defendant "intimidated . . . but did not threaten or assault" a forest ranger by making the ranger "timid or fearful"); *see also Willfong*, 274 F.3d at 1301 (defining "interfere" as to "oppose, intervene, hinder, or

4

prevent" official Forest Service duties). All of the officers present at the time of the encounter testified that Ms. Havens' actions made them fearful. Ms. Havens hindered and prevented operations to the extent that the Forest Service ceased all present and future fire prevention activities near Ms. Havens' property and required any Forest Service officers in the area to be escorted by law enforcement.

Ms. Havens' arguments that her threats were conditioned on the officers trespassing on her property and that they "had no reason to be intimidated unless they trespassed on her land," are unavailing. The January 2018 confrontation arose from a lengthy boundary dispute between Ms. Havens and the Forest Service, and the officers did not know where Ms. Havens believed her property began. Ms. Havens' argument that her statements did not threaten unlawful violence because she had a right to protect her property is equally unavailing. Ms. Havens did not threaten to use force in defense of an occupied structure, nor was her threat to use "force likely to cause death or serious bodily harm . . . necessary to prevent the commission of a forcible felony." Mont. Code Ann. § 45-3-104.

**AFFIRMED.**